SCHMITZ, Appellant,

v.

BOB EVANS FARMS, INC. et al., Appellees.

[Cite as *Schmitz v. Bob Evans Farms, Inc.* (1997), 120 Ohio App.3d 264.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 70766.

Decided May 12, 1997.

*Rubenstein, Novak, Einbund & Pavlik* and *Nancy J. Fleming; Kinkela & Kinkela* and *Gabrille G. Kinkela,* for appellant.

*Vorys, Sater, Seymour & Pease, Jacklyn J. Ford, Chris North* and *Ellen Toth,* for appellee Bob Evans Farms, Inc.

*Zukerman & Associates, S. Michael Lear* and *Larry W. Zukerman,* for appellee Jaymz Keller.

NAHRA, Presiding Judge.

Appellant, Kevin M. Schmitz, appeals the grant of summary judgment to appellees, Jaymz Keller and Bob Evans Farms, Inc. ("BEF"). For the following reasons, we affirm the grant of summary judgment.

In July 1994, Schmitz and Keller worked at BEF's Elyria restaurant. Keller was a second assistant manager at the restaurant; Schmitz, who was a minor at the time, worked as a busser. Keller is homosexual; Schmitz is heterosexual. Both Keller and Schmitz are male.

On July 28, 1994, Schmitz and Keller worked late into the night. Schmitz testified on deposition that as the two worked, Keller discussed his homosexual lifestyle with Schmitz. Later, according to appellant, Keller commented that he liked Schmitz's hair. Appellant alleged that as the night wore on he requested a schedule change from Keller. Keller allegedly told Schmitz that he might "have to do something for it."

After completing the work, Keller drove Schmitz home. Appellant testified that during the ride to his parents' house, Keller revealed his fear about violence directed at homosexuals. Allegedly, Keller told Schmitz how attractive he thought that he was. According to appellant, Keller then made references to performing fellatio on him, asked him if he had ever measured his penis, and told him not to tell anyone what he had said. The remainder of the drive to Schmitz's house was without further incident.

The following day, appellant brought these allegations to the attention of the BEF area director, Tom O'Donnell. Keller subsequently resigned. Appellant filed a three-count complaint against both Keller and BEF, alleging *quid pro quo* sexual harassment in violation of R.C. 4112.02. Upon motion by both defendants, the trial court granted summary judgment. Schmitz appeals and asserts two assignments of error.

## I

Appellant's first assignment of error states:

"The trial court erred by concluding that plaintiff–appellant did not present a *prima facie* case of *quid pro* quo sexual harassment by defendant–appellee Jaymz Keller and in granting the motions for summary judgment of defendant–appellees Jaymz Keller and Bob Evans Farms, Inc."

■ This court reviews *de novo* a trial court's grant of summary judgment. *Palmieri v. Deaconess Hosp.* (June 13, 1996), Cuyahoga App. No. 70067, unreported, 1996 WL 325324.

"Civ.R. 56(C) provides that a summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come but to one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *LaCava v. Walton* (June 13, 1996), Cuyahoga App. No. 69190, unreported, 1996 WL 325274.

The movant must demonstrate that no genuine issue of material fact remains requiring trial. *Palmieri, supra.* A factual dispute is material if it can affect the outcome of the trial. *Needham v. The Provident Bank* (1996), 110 Ohio App.3d 817, 675 N.E.2d 514, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211–212. A factual dispute is genuine where reasonable minds could return a verdict in favor of the nonmoving party. *Id.*

Upon motion for summary judgment, the nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099.

" '[A] nonmovant may not rest on the mere allegations or denials of his pleading but must set forth specific facts showing there is a genuine issue for trial.' " *Palmieri, supra,* quoting *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 629 N.E.2d 513. Further, to survive summary judgment, a plaintiff must produce more than a scintilla of evidence in support of her position. *Redd v. Springfield Twp. School Dist.* (1993), 91 Ohio App.3d 88, 92, 631 N.E.2d 1076, 1078–1079. Finally, the court must resolve doubts in favor of the nonmoving party. *Palmieri, supra.*

Appellant alleges that the defendants violated R.C. 4112.02. R.C. Chapter 4112 is Ohio's analog to Section 2000e, Title 42, U.S. Code ("Title VII"), and it includes a broad prohibition against employment discrimination. *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 134, 543 N.E.2d 1212, 1215–1216. Like Title VII, R.C. 4112.02 prohibits sexual harassment. *Id.* (paragraph one of the syllabus). Resolving this appeal, we note that "federal case law interpreting Title VII * * * is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Commt. v. Ohio Civil Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 202, 421 N.E.2d 128, 131.

Appellant's claims present an issue of first impression to this jurisdiction. No Ohio court has decided that a heterosexual male may state a sexual harassment

claim against his homosexual male supervisor. Predictably, the parties disagree as to whether R.C. Chapter 4112 recognizes such a claim.

The federal courts that have addressed the question in Title VII litigation are divided on whether a sexual harassment claim exists against another of the same sex. See, *e.g., Oncale v. Sundowner Offshore Serv., Inc.* (C.A.5, 1996), 83 F.3d 118, petition for certiorari granted (1997), —— U.S. ——, 117 S.Ct. 2430, 138 L.Ed.2d 192 (same-sex sexual harassment claims not actionable); *McWilliams v. Fairfax Cty. Bd. of Supervisors* (C.A.4, 1996), 72 F.3d 1191 (same-sex sexual harassment not actionable among heterosexuals); *Ashworth v. Roundup Co.* (W.D.Wash.1995), 897 F.Supp. 489; *Fleenor v. Hewitt Soap Co.* (S.D.Ohio 1994), No. C–3–94–182, 67 Fair.Emp.Prac.Cas. (BNA) 1625, 1995 WL 386793, affirmed on other grounds (C.A.6, 1996), 81 F.3d 48 (specifically declining to address the issue of same-sex sexual harassment); *Goluszek v. Smith (*N.D.Ill. 1988), 697 F.Supp. 1452; but, see, *e.g., Quick v. Donaldson Co. Inc.* (C.A.8, 1996), 90 F.3d 1372; *Williams v. Dist. of Columbia* (D.D.C.1996), 916 F.Supp. 1; *Johnson v. Community Nursing Serv.* (D.Utah 1996), 932 F.Supp. 269; *Tietgen v. Brown's Westminster Motors, Inc.* (E.D.Va.1996), 921 F.Supp. 1495; *Equal Emp. Opportunity Comm. v. Walden Book Co., Inc.* (M.D.Tenn.1995), 885 F.Supp. 1100, 1103–1104; see, also, *Hopkins v. Baltimore Gas & Elec. Co.* (C.A.4, 1996), 77 F.3d 745 (Niemeyer, J., concurring); *Baskerville v. Culligan Internatl. Co.* (C.A.7, 1995), 50 F.3d 428, 430. The issue may be resolved, as a petition for writ of certiorari is currently pending before the United States Supreme Court in *Oncale, supra.* ■ We decline to address the issue, as it is unnecessary to our resolution of the instant appeal.

■ Accordingly, we turn to appellant's cause of action. In order to sustain his quid pro quo claim, Schmitz must demonstrate (1) that the employee was a member of a protected class, (2) that the employee was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors, (3) that the harassment complained of was based on gender, and (4) that the employee's submission to the unwelcome advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment. *Kauffman v. Allied Signal, Inc., Autolite Div.* (C.A.6, 1992), 970 F.2d 178, 185–186. Of Schmitz's many allegations, only those involving Keller's statement that Schmitz "might have to do something" in order to obtain a schedule change manifests any potential as quid pro quo sexual harassment.

■■■. Having discussed the "protected class" element, above, we move to the next element of the cause of action. The plaintiff testified on deposition that his supervisor told him that he "might have to do something" for a schedule change. Further, Keller allegedly told Schmitz that he found Schmitz attractive and that he wanted to perform fellatio on him, discussed in explicit terms his homosexual lifestyle, and left an offer to engage in homosexual acts lingering. This testimony supports a finding that Keller made sexual advances toward Schmitz. Clearly, these alleged propositions for sexual favors were based on gender.

■■■ The remaining fourth element raises the critical issue on this appeal. The issue is whether Keller's alleged quid pro quo offer creates liability in the absence of any effect on the terms and conditions of Schmitz's employment. Again, the courts which have examined this issue offer vastly divergent views. The Ninth Circuit Court of Appeals in *Nichols v. Frank* (C.A.9, 1994), 42 F.3d 503, stated at 513:

"In sum, we conclude that a supervisor's intertwining of a request for the performance of sexual favors with a discussion of actual or potential job benefits or detriments in a single conversation constitutes *quid pro quo* sexual harassment." Accord *Fowler v. Sunrise Carpet Indus., Inc.* (N.D.Ga.1996), 911 F.Supp. 1560; *Prescott v. Indep. Life & Acc. Ins. Co.* (M.D.Ala.1995), 878 F.Supp. 1545, 1550–1551.

Appellant, though citing no authority, claims that this view controls his appeal.

However, a number of courts require evidence that the employee's reaction to the proposed quid pro quo arrangement affected a term or condition of employment. In *Highlander v. K.F.C. Natl. Mgt.* (C.A.6, 1986), 805 F.2d 644, 649, the Sixth Circuit Court of Appeals upheld judgment in favor of the defendants despite proof that defendant's agent requested sexual intercourse in exchange for a promotion. Therein, the court stated:

"[T]he record was totally devoid of any evidence tending to demonstrate that plaintiff was denied a job benefit or suffered a job detriment as a result of her failure to engage in the activities suggested by Altieri [the alleged harasser]." See, also, *Rose v. Figgie Internatl.* (Dec. 7, 1990), C.A.6 No. 90–1381, unreported, 1990 WL 197824 (grant of summary judgment proper where plaintiff failed to produce evidence demonstrating work-related detriment).

This position is reflected by many of the courts which have addressed quid pro quo sexual harassment under different elemental paradigms. The Seventh Circuit requires a quid pro quo plaintiff to prove that "the employee's reaction to the supervisor's advances affected a tangible aspect of her employment." *Bryson v. Chicago State Univ.* (C.A. 7, 1996), 96 F.3d 912, The District of Columbia

Circuit Court of Appeals, explaining the quid pro quo cause of action, stated in *Gary v. Long* (C.A.D.C. 1995), 59 F.3d 1391, at 1395:

"[T]he gravamen of a *quid pro quo* claim is that a tangible job benefit or privilege is conditioned on an employee's submission to sexual black-mail and that adverse consequences follow from the employee's refusal." See, also, *Saulpaugh v. Monroe Community Hosp.* (C.A.2, 1993), 4 F.3d 134, 142 ("Under a quid pro quo theory, the plaintiff-employee must establish that she was denied an economic benefit either because of gender or because a sexual advance was made by a supervisor and rejected by her."); *Sauers v. Salt Lake Cty.* (C.A.10, 1993), 1 F.3d 1122; *Hartleip v. McNeilab, Inc.* (C.A.6, 1996), 83 F.3d 767 (adverse employment decision resulting from a spurned sexual advance required under Michigan statutory analog).

The Equal Employment Opportunity Commission's Guidelines on Sexual Harassment, Section 1604.11(a), Title 29, C.F.R., while not binding, support this interpretation and are persuasive authority on issues of analogous federal law. See *Griggs v. Duke Power Co.* (1971), 401 U.S. 424, 433–434, 91 S.Ct. 849, 854–856, 28 L.Ed.2d 158, 165–166. The guidelines state:

"Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual * * *."

No Ohio court has resolved the issue. One Ohio court of appeals has apparently adopted the view that there must be an actual effect on the terms and conditions of employment:

"*[Q]uid pro quo* harassment [occurs] where the employee's submission to or rejection of unwelcome sexual conduct *is used as the basis for promotion or other employment decisions * * *.*" (Emphasis added.) *Western-Southern Life Ins. Co. v. Fridley* (1990), 69 Ohio App.3d 190, 194, 590 N.E.2d 325, 328.

We hold that the plaintiff must suffer an actual effect on his terms of employment rather than suffer mere threats. As the United States Supreme Court has indicated, Title VII protects employees against discriminatory practices affecting the terms, conditions or privileges of employment. *Meritor Sav. Bank, FSB v. Vinson* (1986), 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49. For example, in the related "hostile work environment" context, no amount of harassment is actionable until it affects the terms and conditions of employment.

"When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the

victim's employment and create an abusive working environment,' Title VII is violated." (Citations omitted.) *Harris v. Forklift Sys., Inc.* (1993), 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295, 301, quoting *Meritor Sav. Bank, FSB,* supra, 477 U.S. at 65, 67, 106 S.Ct. at 2405, 2405–2406, 91 L.Ed.2d at 58–59, 60. We hold that the same requirement exists in a quid pro quo claim under R.C. Chapter 4112.

Accordingly, the grant of summary judgment was proper because the record fails to contain evidence demonstrating that Schmitz's schedule was actually conditioned upon his compliance with Keller's alleged advances. In fact, the record suggests only that Schmitz's terms of employment were not so conditioned. Further, appellant conceded that after the alleged incident, Keller took no action against him. BEF produced evidence that Keller could not have unilaterally changed Schmitz's schedule. BEF also demonstrated that Schmitz's schedule was the result of disciplinary action taken against him pursuant to company policy.

This case presents a plaintiff unaffected by the alleged harassment. While we recognize the discomfort Keller's alleged advances may have caused Schmitz, Schmitz made no effort to terminate the discussions of homosexuality and faced no change in his terms and conditions of employment. BEF promptly investigated the alleged harassment and brought immediate resolution to appellant's claims. Thus, because Schmitz failed to adduce evidence supporting the fourth element of his quid pro quo cause of action, the trial court properly granted summary judgment.

## II

Appellant's remaining assignment of error states:

"The trial court erred by concluding that defendant–appellee Bob Evans Farms, Inc. is not responsible for the actions of defendant–appellee Jaymz Keller under the theory of *respondeat superior* as that theory is applied to the law governing *quid pro quo* sexual harassment."

Our disposition of appellant's first assignment of error renders this assignment of error moot. No cause of action lies against BEF, and we affirm the trial court's grant of summary judgment.

*Judgment affirmed.*

PATTON, J., concurs.

KARPINSKI, J., concurs in judgment only.

KARPINSKI, Judge, concurring in judgment only.

I concur in judgment only. The majority opinion reaches the correct result, but I disagree with its analysis.

To prevail under the quid pro quo theory of sexual harassment a plaintiff must assert and prove the following:

"(1) that the employee was a member of a protected class; (2) that the employee was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; (3) that the harassment complained of was based on sex; (4) that the employee's submission to the unwelcomed advances was an express or implied condition for receiving job benefits *or* that the employee's refusal to submit to the supervisor's sexual demands resulted in tangible job detriment; and (5) the existence of respondeat superior liability." (Emphasis added.) *Kauffman v. Allied Signal, Inc., Autolite Div.* (C.A.6, 1992), 970 F.2d 178, 186, citing *Highlander v. KFC Natl. Mgt. Co.* (C.A.6, 1986), 805 F.2d 644, 648.

*Kauffman* provides a step-by-step analysis of how the requirements are to be applied. In the case at bar, the first three requirements are not at issue. As to the fourth, there are two ways in which this requirement may be satisfied. Under one alternative the employee refuses to submit to sexual demands and the question is whether there is an adverse employment decision related to the employee's refusal. When there is no clear verbal nexus, the courts have required a tangible job detriment. In *Kauffman*, for example, the Sixth Circuit Court of Appeals remanded the cause on the question of whether being transferred to work on a manual machine for one day was a tangible detriment.

More applicable to the case at bar is the second way of satisfying the fourth requirement: that the supervisor expresses or implies that submission to his advances is a condition for receiving a job benefit. In the case *sub judice* the supervisor, during a conversation, made a variety of sexual overtures and then said that plaintiff "might have to do something" to return to his old schedule. These circumstances are sufficient to establish a verbal nexus because this supervisor could reasonably be understood to imply that plaintiff had to submit to sexual conduct as a condition to receiving a work schedule without Sundays.

As to the fifth criterion, to determine the employer's liability in work environment cases if a supervisor is the alleged harasser, the court considers agency factors such as when the act took place, where it took place, and whether it was foreseeable.[1] *Yates v. Avco Corp.* (C.A. 6, 1987), 819 F.2d 630, 636. In the work

---

1. If the offender is a co-worker, the court is to use the standard of "knew or should have known" to determine employer liability.

environment cases, even if this liability is shown, it can be negated if the employer "responded adequately and effectively once it has notice of the actions." *Kauffman*, 970 F.2d at 184.

In the case at bar the employee (Schmitz) quickly complained to BEF, which commendably took immediate action to remove the supervisor (Keller) from exercising any authority over the complaining party, and Keller subsequently resigned. Thus the employer responded adequately and effectively. It is not clear, however, whether employer liability can be negated in quid pro quo claims.

Some courts speak of strict liability of the employer under the quid pro quo theory. When courts have proceeded under a theory of strict liability, they have also required a clear tangible detriment. See *Prescott v. Indep. Life & Acc. Ins. Co., ante*, 878 F.Supp. 1545. In *Prescott* the court required proof that the terms and conditions of employment be altered. The court also imposed strict liability, however, when it cited with apparent approval the case of *Sparks v. Pilot Freight Carriers, Inc.* (C.A.11, 1987), 830 F.2d 1554, 1564, which said that in quid pro quo cases an employer's prompt and remedial action may mitigate damages but will "in no way" affect the employer's liability. See, also, *Steele v. Offshore Shipbuilding, Inc.* (C.A.11, 1989), 867 F.2d 1311, 1316.

If general agency principles are satisfied and there is a verbal nexus, on the other hand, then there is less need for proof of tangible detriment. In *Kauffman*, the Sixth Circuit Court of Appeals opened the door to a more flexible approach. Working from a quid pro quo theory, the *Kauffman* court noted two cases [2] that did not explicitly limit tangible job detriment to economic loss, and cited a third case [3] for even a broader notion of tangible job detriment to include job benefits. Furthermore, the court indicated some possible exceptions to the strict liability rule when it said:

"While *Highlander* seems to impose strict liability for quid pro quo harassment where there is a tangible job detriment, there may be a *de minimis* exception for temporary actions, such as in this case, or where remedial action is moot and no economic loss occurred."

It is not clear why a tangible detriment would be necessary if a case can proceed under a *respondeat superior* theory or even general agency principles, especially when a nexus is established. In the case at bar, while ignoring the possibility of strict liability, which is the engine that drives courts into requiring more proof of a harm, the majority focusses on whether threats are sufficient to

---

**2.** *Mitchell v. OsAir, Inc.* (N.D.Ohio 1986), 629 F.Supp. 636, 643; *Shrout v. Black Clawson Co.* (S.D.Ohio 1988), 689 F.Supp. 774.

**3.** *Chamberlin v. 101 Realty, Inc.* (C.A.1, 1990), 915 F.2d 777, 783.

establish sexual harassment claims or whether proof of actual effects on the terms of employment are necessary in a quid pro quo claim. After citing conflicting currents in the federal case law and an excerpt from a federal regulation and after noting that one Ohio appellate court "apparently" took one course, the majority abruptly asserts:

"We hold that the plaintiff must suffer an actual effect on his terms of employment rather than suffer mere threats."

While I understand the majority's desire for certainty in charting these waters, such an unqualified pronouncement is likely to provide unreliable guidance in the future. One problem is that the required degree of harm is not tied to a particular theory of liability, such as strict liability. A second problem is that the majority opinion never clarifies what it considers an actual effect on terms of employment and qualifies it in a way that is inconsistent with the Equal Employment Opportunity Commission's guidelines.

The majority's failure to cite the third type of sexual harassment when it quoted the EEOC Guidelines further confuses what it means in distinguishing threats from actual effects on terms of employment. The guidelines provide three types of examples of sexual harassment:

"Harassment on the basis of sex is a violation of section 703 of title VII. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, *or* (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." (Emphasis added.) Section 1604.11(a), Title 29, C.F.R.

In quoting this guideline, the majority fails to include the third criterion and thus ignores the preceding conjunction "or," which indicates that not all three conditions are necessary to establish sexual harassment.

Under type one of the EEOC Guidelines it is not necessary that the harassment *actually affect* a term or condition of an individual's employment; it is sufficient that the supervisor merely *imply* that sexual favors are a term or condition of employment, not that consequences actually follow. However, in this type, the verbal nexus is crucial. In type two, although an actual effect is required, the effect is required merely to be a basis for "employment decisions," a term arguably much broader than "term or condition of employment." In the third type what is affected is the employer's working environment. The harass-

ment need not affect a term or condition of employment or even "employment decisions." The majority writes, however, that in the related "hostile work environment" context, "no amount of harassment is actionable until it affects the terms and conditions of employment."[4]

This sentence ignores a variety of seriously harmful stages that precede final events such as rape, termination, or loss of promotion. Under the guidelines, an employer could be liable for a hostile environment made pervasively abusive by insult, ridicule, and requests for sexual favors—all in the form of verbal threats— without any other tangible effect on the terms or conditions of employment. The majority's categorical abandonment of sexual harassment based on threats is misleading because it appears to exclude threats of such a severity they are injurious in themselves. An employee need not suffer a complete mental breakdown before an employer is held liable for its supervisor's actions in work environment cases. *Harris*, 510 U.S. at 20–22, 114 S.Ct. at 370, 126 L.Ed.2d at 302–303.

The EEOC Guidelines go on to add that "[i]n determining whether alleged conduct constitutes sexual harassment, the Commission will look at the record as a whole and at the totality of the circumstances * * *." Section 1604.11(b), Title 29, C.F.R. The totality of circumstances in the case at bar, however, indicates that the opportunity for adverse consequences of any kind, not just for effects on the "terms of employment," was never allowed to develop, because the employee complained immediately and the employer took swift and curative action. Under different circumstances threats could have become severe enough to be actionable under the guidelines, if, for example, plaintiff had been asked to repeat the story for various committees, the members of which ridiculed him, or if plaintiff remained under the authority of the offensive supervisor, who continued his sexual advances.

Among its subsidiary arguments, the majority notes that the supervisor could not have changed plaintiff's schedule and that plaintiff's current schedule was the result of disciplinary actions. This view ignores the apparent authority of the supervisor. For purposes of proving sexual harassment, it is sufficient that a supervisor indicates, even if only implicitly, that he has the authority to change a

---

4. Compare this sentence with the following from the United States Supreme Court decision in *Harris v. Forklift Sys., Inc.* (1993), 510 U.S. 17, 23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295, 302–303: "Whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is relevant in determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, *no single factor is required.*" (Emphasis added.)

schedule and there is no evidence that the employee knew otherwise. *E.g., Kim Hirase–Doi v. U.S. West Communications, Inc.* (C.A.10, 1995), 61 F.3d 777, 787.

That is the situation in the case at bar. The employer, however, prevented adverse consequences of any kind. That is the reason for affirming the lower court. There is no need and little reason to exclude threats as a basis for all sexual harassment cases or to limit actions in quid pro quo cases to those affecting only terms of employment, unless this court is also willing to acknowledge the strict liability of employers in quid pro quo cases where a nexus is demonstrated. For these reasons I concur in judgment only.