OPINION
Plaintiff-appellant Marilou Brozic[1] appeals from the trial court opinion and order that granted the motions for summary judgment filed by defendants-appellees Julius Nichols and Sears, Roebuck Company ("Sears"), thus terminating appellant's action based upon a claim of sexual harassment.
Appellant argues she provided adequate evidence to demonstrate Sears permitted and fostered a hostile work environment in contravention of R.C. 4112.02, thus contending summary judgment was improper. This court has reviewed the record, finds the trial court's order was appropriate and, therefore, affirms it.
The record reflects appellant began working for appellee Sears as an appliance salesperson in August, 1988 at the Mentor location. During her employment there, appellant had some difficulties relating to her supervisor; therefore, when, in the autumn of 1990, Division Manager Doug Dunson, who was a personal friend, offered appellant a position at the store located at Great Northern Mall, appellant took the opportunity to transfer.
In May 1992, Dunson was promoted to the position of Division Manager of Sears' Middleburg Heights location. Once again at Dunson' s request, appellant transferred to that store. Several other people also were employed in her department, including appellee Julius Nichols, who worked "part time."[2]
In the summer of 1992, appellant was at the "back of the department" conversing with fellow employee Susan Oller when Nichols approached. Nichols asked appellant if she would accompany him to see the movie "Indecent Proposal." Appellant was "surprised" at the invitation; she responded, "[A]bsolutely not," and, "I'm married." Appellant interpreted Nichols' invitation to be a request for a date since she recalled "conversation in the department that his wife was out of town." Although appellant occasionally discussed times of marital discord with her co-workers, she considered Nichols' invitation inappropriate. She later informed Dunson of the incident but made neither a formal written complaint nor a request for any specific action to be taken by Sears with regard to the matter.
Thereafter, appellant noticed Nichols "started following [her] around a lot, telling [her] how much he loved [her]" while they were working. In the summer of 1993, Nichols invited appellant to accompany him to a formal "dinner dance," explaining that his wife was "out of town." Once again, appellant refused. Appellant was aware Nichols "followed all the women around"; nevertheless, she felt uncomfortable around him. Since Nichols' behavior bothered appellant, she eventually spoke to Dunson about it while she, Dunson, and another employee were eating together in the employees' lunchroom. Dunson "laughed." Appellant did not seem insulted by Dunson's reaction; she merely requested him to "please take care of" the situation. Thereafter, appellant made no inquiry as to whether Sears had taken any disciplinary action against Nichols.
The following winter, Nichols had contracted a cold; however, he still came to work. Nichols announced to appellant that "he was sick and he was going to make sure that [she] got sick, too." Nichols thereupon followed appellant around the department and "coughed in [her] face." Although appellant was not sure if Nichols was merely "kidding around," when she became ill a few days later, she held Nichols responsible. The relationship between the two workers thus deteriorated. For example, appellant and Nichols competed over customers to the extent that, on one occasion, Nichols "stuck his foot out," apparently in an attempt to trip appellant as she hurried to be the first to reach a customer.
Appellant subsequently reported the coughing incident to Dunson; however, Dunson's response to her complaint was not what appellant had expected. Dunson indicated he had become aware that appellant had been refusing to speak to Nichols even on matters concerning their employment. Dunson therefore requested appellant "to be nicer" to Nichols. Despite that request, appellant "just told everybody" in her department about her frustrations with Nichols.
Shortly thereafter, during a workday, Nichols volunteered to "take [appellant] out to dinner for [her] birthday." Appellant angrily refused the invitation. Nichols later telephoned appellant on her birthday to extend his best wishes on the occasion.
At that point, Dunson's supervisor contacted appellant to reprimand her for her comments to her co-workers regarding Nichols. Appellant defended her behavior with an explanation of "all the incidents that had happened" between Nichols and her. A few days later, the store managers asked appellant to sign a written statement in which she and Nichols agreed "[t]he behavior displayed by both Julius and [appellant] was considered inappropriate and unprofessional" and would "not be tolerated." Nichols signed the statement; however, appellant refused.
Thereafter, appellant took offense at Nichols' tone when he wished her to have a nice vacation. Appellant also did not appreciate that Nichols mailed to everyone in the department, including appellant and her husband, invitations to a celebration of his three children's graduations.
In June 1994, appellant was diagnosed with breast cancer. She took "sick leave" from work to undergo surgery and therapy. Thereafter, she ceased her employment with Sears and instead began to help her husband in his new business venture.
In January 1997, appellant filed the instant action against appellees Sears and Nichols. Appellant alleged in count one of her complaint that due to appellees' actions, she "was obliged to work in an atmosphere which was hostile to females by virtue of unsolicited and unwelcome sexual advances and other verbal conduct of a sexual nature * * *." Appellant further alleged that the sexual harassment was "sufficiently pervasive to alter the condition of [her] employment and create a working environment which was intimidating, insulting and abusive to female employees * * *." Appellant also included claims for infliction of emotional distress and negligence based upon the doctrine of respondeat superior.
Appellees each answered the complaint with denials of the pertinent allegations. Following discovery in the action, both appellees filed separate motions for summary judgment.
In its brief in support of its motion, appellee Sears argued in pertinent part that appellant could not prove an element of her hostile work environment claim, viz., that the alleged sexual harassment was severe and pervasive. Appellee Sears supported its argument with portions of appellant's deposition testimony, which it filed contemporaneously with its motion.
Appellant responded with a brief in opposition. She attached thereto two of her affidavits, unsigned, together with a typewritten "Listing of Events" as she recalled the incidents of which she complained.
Thereafter, appellee Sears filed the deposition of appellant's co-worker Susan Oller with the trial court and also filed a reply brief in which it objected to any consideration of appellant's affidavits.
The trial court subsequently issued its opinion and order granting appellees' motions for summary judgment with respect to all of appellant's claims against them. In pertinent part, the trial court stated appellant had failed to produce evidence that Nichols' conduct had the effect of either unreasonably interfering with her work performance or creating an intimidating, hostile or offensive work environment.
Appellant has filed a timely appeal from the trial court's order. She presents the following as her single assignment of error:
 THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION (sic) FOR SUMMARY JUDGMENT AS THERE WAS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER PLAINTIFF WORKED AT A HOSTILE WORK ENVIRONMENT AND FURTHER WHETHER DEFENDANTS WERE ENTITLED TO JUDGMENT AS A MATTER OF LAW.
Appellant argues the evidence before the trial court did not justify its order of summary judgment for appellees on appellant's claim of workplace sexual harassment.[3] Appellant's argument is unpersuasive.
In reviewing a motion for summary judgment, this court conducts a de novo review of the trial court's decision. "A court reviewing the granting of a summary judgment must follow the standards set forth in Civ.R. 56 (C) * * *." Aglinsky v.Cleveland Bldrs. Supply Co. (1990), 68 Ohio App.3d 810.
When a court considers a motion for summary judgment, the moving party bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to any material element of the nonmoving party's claim.Dresher v. Burt (1996), 75 Ohio St.3d 280; cf., Vahila v. Hall
(1997), 77 Ohio St.3d 421. If the moving party does so, the nonmoving party has a reciprocal burden to produce evidence on any issue for which that party bears the burden of production at trial. Wing v. Anchor Media, Ltd. of Texas (1991). 59 Ohio St.3d 108. When the defendant, as the moving party, furnishes evidence that demonstrates the plaintiff has not established the elements necessary to maintain her sexual harassment action, summary judgment is properly granted in favor of defendant. Bell v.Cuyahoga Community College (Aug. 13, 1998), Cuyahoga App. No. 73245, unreported.
Appellant brought her claim of sexual harassment pursuant to R.C. 4112.02.[4] To support her claim, therefore, appellant was required to produce evidence that demonstrated each of the following elements:
(1) the employee was a member of the protected class;
 (2) the employee was subjected to unwelcome harassment;
(3) the harassment complained of was based upon sex;
 (4) the harassment had the purpose or effect of unreasonably interfering with the employee's work performance or creating an intimidating, hostile, or offensive work environment; and
(5) the existence of respondeat superior liability.
Delaney v. Skyline Lodge, Inc. (1994), 95 Ohio App.3d 264, 270. See, also, Schmitz v. Bob Evans Farms, Inc. (1997), 120 Ohio App.3d 264,269.
A review of the evidentiary materials filed in the trial court demonstrates appellant could prove only the first and second elements of her claim.
Nichols' conduct toward appellant, although it was unwelcome to her, can scarcely qualify as being sexual in nature. Nichols' actions in asking appellant to accompany him to a movie and dinner, following appellant in the store, declaring his "love" for her, coughing at her, and sending her an unwelcome invitation to a family celebration can be characterized at most as either uncouth or childish rather than as sexual. Madera v. SatelliteShelters, Inc. (Aug. 22, 1998), Cuyahoga App. No. 73172, unreported; see, also, Hampel v. Food Ingredients Specialties
(Oct. 29, 1998), Cuyahoga App. No. 73143, unreported.
Secondly, assuming arguendo the action of which appellant complained had sexual overtones, nevertheless, she failed to meet the standard of conduct that is prescribed by R.C. 4112.02.
The Ohio Supreme Court previously has noted that since R.C.4112.02 is Ohio's analog to Section 2000e, Title 42, U.S. Code, federal case law interpreting that section, usually referred to as "Title VII," is generally applicable. Plumbers SteamffittersJoint Commt. v. Ohio Civil Rights Comm. (1981), 66 Ohio St.2d 192,196. Accordingly, not all workplace conduct that can be construed as having sexual overtones can be characterized as harassment forbidden by the statute. Meritor Savings Bank v. Vinson (1986),477 U.S. 57, 67. Rather, the conduct complained of must be severe or pervasive enough to create an environment that not only the victim subjectively regards as abusive but also a reasonable person would find hostile or abusive. Harris v. Forklift Systems, Inc.
(1993), 510 U.S. 17, 21-22. Pursuant to this standard, conduct that is merely offensive is not actionable. Id. at 21.
The court must examine the circumstances surrounding the conduct and must consider them within the framework of several factors to determine if the conduct is actionable. These factors include the following:
(1) the conduct's frequency;
(2) the conduct's severity;
 (3) whether the conduct is physically threatening or humiliating; and
 (4) whether the conduct unreasonably interferes with the victim's work performance.
Id. at 23.
An examination of the facts of this case with these factors in mind leads to the conclusion that Nichols' behavior did not qualify either as intimidating or hostile or as unreasonably interfering with appellant's work performance.
Appellant complained of approximately only six instances of Nichols' conduct toward her over a span of more than two years. Nichols' attentions toward appellant, moreover, were neither oppressive nor in any manner threatening.
Furthermore, although appellant may have found them personally embarrassing, they cannot reasonably be construed as having been degrading to her. Cf., Doe v. Doe Corporation One (June 5, 1998), Lucas App. No. CI95-2399, unreported.
Finally, since appellant stated she was a leader in sales during this time period, and further stated her reasons for leaving Sears were unrelated to the problems she was having with Nichols, she could not prove Nichols' actions toward her affected her in her work performance.
The evidence thus demonstrated appellant could not establish the elements necessary to support her claim of workplace sexual harassment in contravention of R.C. 4112.02; therefore, the trial court did not err in granting appellees' motions for summary judgment.
Appellant's assignment of error is, accordingly, overruled.
The order of the trial court is affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES M. PORTER, A.J. and ANNE T. KILBANE, J. CONCUR.
 ________________________ JUDGE KENNETH A. ROCCO
[1] While this appeal was pending, appellant Marilou Brozic died. This court has permitted her husband, Tim Brozic, to be substituted as a party.
[2] Quotes are taken from evidentiary materials filed in the trial court.
[3] Appellant presents no argument with respect to her remaining claims against appellees.
[4] R.C. 4112.02 states in relevant part:
§ 4112.02 Unlawful discriminatory practices.
It shall be an unlawful discriminatory practice:
 (A) For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.