OPINION
{¶ 1} Appellant, Mary L. Weiss, appeals from the July 14, 2003 judgment entry of the Trumbull County Court of Common Pleas, granting appellee's, Target Stamped Products, motion for summary judgment.
 {¶ 2} On December 17, 2002, appellant filed a complaint against appellee alleging sex discrimination during the course of her employment pursuant to R.C. 4112.02. Appellee filed an answer on February 14, 2003.
 {¶ 3} On April 11, 2003, appellee filed a motion for summary judgment pursuant to Civ. R. 56. Appellant filed a memorandum in opposition to appellee's motion for summary judgment on July 7, 2003. Appellee filed a reply on July 10, 2003.
 {¶ 4} A hearing was held on July 11, 2003.
 {¶ 5} Appellant began her employment with appellee on May 3, 2000. Appellant was hired as a sorting inspector and a press operator, and was considered a probationary employee for the first ninety days.
 {¶ 6} According to the affidavit of Patricia Marsh ("Marsh"), appellee's human resources/safety manager, a probationary period is one of appraisal during which appellee may discharge an employee at its sole discretion without recourse to the union. This policy was set forth in appellee's employee handbook which was given to appellant on May 2, 2000. On that date, appellant acknowledged her receipt of this policy by signing the "Acknowledgment of Receipt of Handbook."
 {¶ 7} Marsh testified that during appellant's probationary period, her supervisor, Vince Strines ("Strines"), noted problems with her job performance, including that she was slow to learn and had difficulty understanding directions. Marsh stated that on two different occasions, Strines and Rick Schreves ("Schreves"), appellee's maintenance supervisor, smelled alcohol on appellant's breath during work hours.[1]
As such, Marsh indicated that a business decision was made to terminate appellant's employment. Marsh explained that the decision was based solely on appellant's job performance and behavior and not on her gender.
 {¶ 8} Appellant stated in her affidavit that on the first day she reported to work, she asked one of appellee's supervisors, Jeff Stevens ("Stevens"), where she would be stationed for work. Appellant stated that Stevens replied that she was not his property but that of another supervisor, Strines. Appellant indicated that she found Stevens's remark strange but did not report it because it was her first day. During her employment, appellant explained that Strines continually stared at her but never corrected her work or advised her to do her job in a different manner. Appellant also stressed that she never drank alcohol before or while at work, nor was she ever disciplined for reporting to work under the influence by either Strines or another supervisor.
 {¶ 9} Appellant stated that on or about June 8, 2000, paychecks were distributed to all employees except herself. When appellant asked Strines about her paycheck, she said that Strines replied that Stevens had it and that she should get it from him. Appellant indicated that she went to Stevens's office and asked him for her paycheck, but he ignored her request and asked her if she would "go cruising" with him. Appellant indicated that she ignored Stevens's question and asked for her paycheck again, at which time Stevens screamed at her and asked her if she wanted to go cruising. Appellant responded that she was married and simply wanted her paycheck. Appellant testified that Stevens complied and she left his office. Appellant said that she was shocked by Stevens's behavior and reported the incident to one of the union officials. Appellant stated that the union official told her that Strines was telling other employees that she was a "dick tease" because she teased male employees.
 {¶ 10} On or about June 16, 2000, appellant indicated that Strines advised her that she was being terminated. Appellant testified that she asked Strines why and he said that there was no reason.
 {¶ 11} Pursuant to its July 14, 2003 judgment entry, the trial court granted appellee's motion for summary judgment. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignment of error:
 {¶ 12} "The trial court erred to the prejudice of [appellant] by granting [appellee's] motion for summary judgment."
 {¶ 13} In her sole assignment of error, appellant argues that the trial court erred by granting appellee's motion for summary judgment and presents two issues. In her first issue, appellant alleges that the trial court erred when it failed to apply the standard for granting summary judgment set forth in Dresher v. Burt (1996), 75 Ohio St.3d 280. In her second issue, appellant contends that the trial court erred when it dismissed her complaint since appellee subjected her to both hostile environment and quid pro quo harassment, and because no affirmative defense is available to appellee.
 {¶ 14} In order for a summary judgment to be granted, the moving party must prove: "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v.Eckstein (1996), 76 Ohio St.3d 383, 385.
 {¶ 15} The Supreme Court stated in Dresher, supra, at 296, that: "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portionsof the record which demonstrate the absence of a genuine issue of fact ona material element of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ. R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic.)
 {¶ 16} If the moving party satisfies this burden, then the nonmoving party has the burden pursuant to Civ. R. 56(E) to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ. R. 56(E). Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. The Brown court stated that "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp.
(1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 17} In the case at bar, although the trial court in its July 14, 2003 judgment entry did not state specific reasons for granting summary judgment to appellee, the record establishes that appellant failed to present any credible evidence of sex discrimination in order to raise a genuine issue of material fact. Again, appellant was a probationary employee who could be discharged by appellee at its sole discretion without recourse to the union. According to the deposition of Marsh, Strines noted problems with appellant's job performance. Also, both Marsh and Shreves indicated in their depositions that on two different occasions, Strines and Shreves smelled alcohol on appellant's breath during working hours. Thus, appellee made a business decision to terminate appellant's employment based on her job performance and behavior. There is no evidence that appellee terminated appellant based on her gender. Based on Dresher, supra, appellee presented evidence pursuant to Civ. R. 56(C) which affirmatively demonstrates that appellant has no evidence to support her claim. Appellant's first issue is without merit.
 {¶ 18} In her second issue, appellant stresses that the trial court erred when it dismissed her complaint in which she alleged discrimination based on sex in violation of R.C. 4112.02(A).
 {¶ 19} R.C. 4112.02(A) provides that: "[i]t shall be an unlawful discriminatory practice * * * [f]or any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 20} We stated in Daniels v. Vienna Township Bd. of Trustees,
11th Dist. No. 2002-T-0080, 2003-Ohio-3877, at ¶ 11-16, that: "[w]hen an individual brings a discrimination claim in Ohio for violating R.C. 4112.02, the Supreme Court of Ohio has held that `federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S. Code, is generally applicable * * *.' Plumbers Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.
(1981), 66 Ohio St.2d 192, 196 * * *.
 {¶ 21} "* * *
 {¶ 22} "The starting point for judicial inquiry into a complaint alleging discrimination is McDonnell Douglas v. Green (1973), 411 U.S. 792
* * *. `McDonnell established a flexible formula to ferret out impermissible discrimination in the hiring, firing, promoting, and demoting of employees.' Plumbers, supra, * * * at 197. The first step is for a complainant to prove a prima facie case of discrimination. The basic elements of a discrimination case are that: (1) the employee belongs to a protected class; (2) the employee is discharged; (3) the employee is qualified for the position; and (4) the employee is replaced by, or that her discharge permitted the retention of, a person not belonging to the protected class. Id.
 {¶ 23} "Appellant has the burden of establishing a prima facie case of discrimination in violation of R.C. 4112.02(A) by a preponderance of the evidence. Omobien v. Ohio Civ. Rights Comm. (1993), 89 Ohio App.3d 100,103-104 * * *. If appellant succeeds in proving a prima facie case, the burden shifts to appellee to articulate some legitimate, nondiscriminatory reason for the employee's termination. Plumbers,
[supra], at 197. If appellee carries its burden, appellant must demonstrate that the reasons offered by appellee were not the true reasons, but were a pretext for discrimination. Id. at 197-98." (Parallel citations omitted.)
 {¶ 24} This court stated in Doe v. Marker, 11th Dist. No. 2003-T-0002, 2003-Ohio-6230, at ¶ 15-16, that:
 {¶ 25} "[g]enerally speaking, under R.C. 4112.02(A), there are two types of actionable sexual harassment: `(1) "quid pro quo" harassment, i.e., harassment that is directly linked to the grant or denial of a tangible economic benefit, or (2) "hostile environment" harassment, i.e., harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment.'Hampel v. Food Ingredients Specialties, Inc. [2000], 89 Ohio St.3d 169 * * *, paragraph one of the syllabus * * *.
 {¶ 26} "In order to maintain an action for quid pro quo sexual harassment, the plaintiff must demonstrate `(1) that the employee was a member of a protected class, (2) that the employee was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors, (3) that the harassment complained of was based on gender, and (4) that the employee's submission to the unwelcome advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment.' Schmitz v. Bob Evans Farms, Inc.
(1997), 120 Ohio App.3d 264, 269 * * *."
 {¶ 27} To establish a claim of hostile environment sex discrimination, we stated in Schwab v. Delphi Packard Elec. Systems,
11th Dist. No. 2002-T-0081, 2003-Ohio-4868, at ¶ 18, quoting Hampel, supra, at 176-177, that: "a plaintiff must show: `(1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly o[r] indirectly related to employment," and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.'"
 {¶ 28} In the instant matter, appellant contends that she was subjected to quid pro quo sexual harassment because she was fired one week after Stevens subjected her to sexual advances when he asked her to "go cruising" with him. We disagree.
 {¶ 29} Appellant is unable to show that her continued employment with appellee was conditioned upon her acceptance of Stevens's alleged invitation. See Schmitz, supra, at 271. There is no evidence in the record that Stevens indicated, either expressly or impliedly, to appellant that she would be terminated unless she went cruising with him. Therefore, based on Marker and Schmitz, supra, appellant fails to establish a claim for quid pro quo sexual harassment.
 {¶ 30} Appellant also alleges that she was subjected to hostile environment sex discrimination by Stevens's oral harassment and by her supervisor's, Strines's, continual staring at her while she worked. Appellant argues that these incidents were unwelcome and were directed against her based on her sex. Appellant stresses that the cumulative effect was severe and pervasive. We disagree.
 {¶ 31} In Daniels, supra, at ¶ 24, we stated that: "in Burnett v.Tyco Corp. (C.A.6, 2000), 203 F.3d 980, 981, the Sixth Circuit dealt with a case where the personnel manager (1) placed a pack of cigarettes inside an employee's tank top and brassiere strap, (2) gave the employee a cough drop and stated that since she lost her cherry, he was giving her one to replace the one she lost, and (3) when viewing the employee's sweater that read `Deck the malls,' he started saying, `dick the malls, dick the malls, I almost got aroused.' In that case, the Sixth Circuit affirmed the granting of summary judgment in favor of the employer. Id."
 {¶ 32} In the case at bar, appellant fails to establish that Stevens's off-hand comment/isolated invitation to "go cruising" with him was meant to be sexual or qualifies as severe or pervasive to affect the terms, conditions, or privileges of her employment. Off-hand comments and isolated incidents, unless extremely serious, i.e. physical touching, will not amount to discrimination in the terms and conditions of employment. See, e.g., Faragher v. Boca Raton (1998), 524 U.S. 775;DeArment v. The Timken Co., 5th Dist. No. 2002CA00409, 2003-Ohio-1792;Powers v. Ferro Corp., 8th Dist. No. 79383, 2002-Ohio-2612. "In order for the comments to support a claim for discrimination, they must reveal discriminatory animus by the speaker." Daniels, supra, at ¶ 21, citingGagne v. Northwestern Natl. Ins. Co. (C.A.6, 1989), 881 F.2d 309, 314.
 {¶ 33} Also, although appellant indicates that Strines continually stared at her while she worked, she does not allege or show that Strines stared at her in a sexual manner. In addition, appellant's contention that an unnamed union official told her that Strines told other employees that she was a "dick tease" is hearsay. After reviewing appellant's allegations, it is our position that the comment/action did not reveal any hostility or animus toward women. In addition, we must note that appellant acknowledged her receipt of appellee's employee handbook which stated that appellee may discharge appellant at its sole discretion without recourse to the union. We must also stress that appellant did not make a complaint to management. Based on the totality of the circumstances, appellant fails to establish, pursuant to Schwab andHampel, supra, a claim of hostile environment sex discrimination.
 {¶ 34} Pursuant to the evidence presented, appellant did not establish all the prima facie elements of a discrimination claim and appellee articulated legitimate, nondiscriminatory reasons for the decision to terminate her employment, which did not prove to be pretextual. Even construed in a light most favorable to appellant, the evidence did not create a genuine issue of fact regarding sex discrimination or harassment. Appellant's second issue is without merit.
 {¶ 35} Based on Mootispaw, supra, it was proper for the trial court to conclude that summary judgment was appropriate.
 {¶ 36} For the foregoing reasons, appellant's sole assignment of error is not welltaken. The judgment of the Trumbull County Court of Common Pleas is affirmed.
Rice, J., concurs, O'Neill, J., dissents with Dissenting Opinion.
[1] This fact was confirmed by Shreves in his affidavit. The record does not contain an affidavit by Strines.