**VITATOE, Appellant,**

v.

**LAWRENCE INDUSTRIES, INC., et al., Appellees.**

[Cite as *Vitatoe v. Lawrence Industries, Inc.,* 153 Ohio App.3d 609, 2003-Ohio-4187.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 81984.

Decided Aug. 7, 2003.

610

Richard T. Seman, for appellant.

Mansour Gavin Gerlack & Manos Co., Amy L. Phillips and Jeffrey M. Embleton, for appellees.

FRANK D. CELEBREZZE, JR., Judge.

{¶ 1} Appellant, Bobbie Jo Vitatoe, appeals from the judgment of the Court of Common Pleas, Civil Division, which granted summary judgment for appellees, Lawrence Industries, Inc. and Lawrence Kopittke Sr., on the claims for hostile work environment, sexual harassment, retaliatory termination, and discharge in violation of public policy.[1] For the following reasons, we affirm the judgment of the lower court.

---

[1] Vitatoe filed a claim for intentional infliction of emotional distress, which she later dismissed.

{¶ 2} On April 24, 2000, Bobbie Jo Vitatoe ("Vitatoe"), an 18–year–old female, was hired to work for Lawrence Industries as a machine operator; she was an at-will employee. Lawrence Industries is owned and operated by its president, Lawrence Kopittke Sr. ("Kopittke"), with the assistance of his sons, Francis, Arthur, Lawrence Jr., and Richard. Upon commencement of her employment, Vitatoe received an employee handbook containing a sexual harassment policy. She acknowledged that she had read and understood the handbook by affixing her signature to the handbook.

{¶ 3} On September 18, 2000, Vitatoe was terminated for just cause. She had used profanity toward Robert Cyrulik, her supervisor, and exhibited excessive absenteeism at work. Eventually, Vitatoe contacted Richard Kopittke at Lawrence Industries, requesting to be rehired. Kopittke Sr. and two of his sons agreed to rehire her if she signed a "Last Chance Agreement," the terms of which provided:

{¶ 4} "It is agreed by both parties that Bobbie Jo Vitatoe was originally hired on April 24, 2000 and terminated on September 18, 2000 for just cause.

{¶ 5} "Ms. Vitatoe had a high rate of absenteeism and on the day of termination 'cussed out' her supervisor, Robert Cyrulik, and was insubordinate.

{¶ 6} "In January of 2001, Ms. Vitatoe requested that she be given a second chance at employment with the company, that she liked her work, was good at her work and realized that she had made a mistake.

{¶ 7} "Ms. Vitatoe is being re-employed under the following conditions:

{¶ 8} "1. 90–day probationary period will begin January 10, 2001;

{¶ 9} "2. Ms. Vitatoe will make a good faith effort to reduce absenteeism;

{¶ 10} "3. Ms. Vitatoe agrees that any insubordination on her part will result in immediate discharge.

{¶ 11} "As an incentive, the company has agreed to raise her pay from $7.00 per hour (old pay rate) to $7.50 per hour."

{¶ 12} Vitatoe signed the "Last Chance Agreement," and in her deposition testimony acknowledged she understood its terms, including that she could be immediately discharged for any act of insubordination, which included but was not limited to "cussing at a person in management or any other employee of Lawrence Industries, breaking a work rule, using profanity, and fighting with co-workers." Vitatoe commenced her re-employment on January 10, 2001.

{¶ 13} In mid-January 2001, Darnel Jordan was hired by Lawrence Industries. Upon commencement of Jordan's employment, Vitatoe immediately became uncomfortable with Jordan's behavior and alleged that Jordan had made advances towards her. Jordan, referring to Vitatoe's previous termination by Lawrence,

stated that he had information about her. Vitatoe advised Cyrulik that she did not want to train Jordan; therefore, Cyrulik suggested that Jordan be trained by Maria, Vitatoe's mother and co-worker.

{¶ 14} Over the course of the next few weeks, Jordan posed various personal questions to Vitatoe. For instance, Jordan inquired why Vitatoe did not wear her hair up, where she parked her car, what car she owned, and where she shoots pool. Vitatoe also added in her deposition that Jordan had asked her out for drinks and alleged that he had followed her home on one occasion. Pertinent to the incident when Jordan allegedly followed her home, Vitatoe, believing that she was being followed, turned into a gas station, while Jordan drove by without incident. Vitatoe stated in her deposition that she was unaware whether Jordan was following his usual route home.

{¶ 15} Vitatoe further alleged that Jordan constantly stared at her while she was working, and, on one occasion, as she was exiting the bathroom, Jordan was standing outside the bathroom. Jordan also made an offensive comment pertaining to Vitatoe's posterior.

{¶ 16} Vitatoe additionally alleges that on four different occasions, she notified her immediate supervisor, Cyrulik, about Jordan's behavior and comments. Vitatoe admitted that Jordan's questions were not sexual in nature, with the exception of the comment about her posterior, but that he was excessively curious about some aspects of her life. Cyrulik's response to Vitatoe was to ignore Jordan. Cyrulik also promised that he would discuss this situation with Jordan.

{¶ 17} On February 26, 2001, Vitatoe arrived at Lawrence Industries at 3:00 p.m., prior to the start of her shift. A situation arose whereby Vitatoe became upset. Vitatoe used vulgar language with Cyrulik and with two co-workers, Melissa Rowe and Debbie Delong.

{¶ 18} Soon thereafter, Francis Kopittke investigated the complaints about Vitatoe's behavior and spoke with several co-workers regarding the incident, including Debbie Delong, Melissa Rowe, Bakshinder Attari, and Walter Politouraj Jr. These witnesses summarized Vitatoe's behavior as follows: Vitatoe raced her vehicle through the factory parking lot where she had parked that day and, using vulgar language, confronted co-workers.

{¶ 19} Lawrence Industries has a written sexual harassment policy contained in their handbook, which states:

{¶ 20} "Lawrence Industries will not tolerate offensive or inappropriate sexual behavior at work. Inasmuch as such conduct which constitutes sexual harassment is prohibited by law, individuals who engage in offensive or inappropriate sexual behavior will be subject to discipline, up to and including discharge.

Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitutes sexual harassment when:

{¶ 21} "* * * such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment."

{¶ 22} Furthermore, Lawrence Industries' written sexual harassment policy provides the employee with a procedure to divulge the harassment to the personnel department. The individual may also complain to his/her immediate supervisor, or the individual may contact any other member of management. The policy states that "appropriate corrective action will be taken based upon the outcome of the investigation."

{¶ 23} Lawrence Industries also included a section in its handbook that referred to the specified uses and abuses of the parking lots provided for the employees.

{¶ 24} Vitatoe was terminated on February 27, 2001, for violating the "Last Chance Agreement."

{¶ 25} Vitatoe alleges three assignments of error for our review. We will address the second assignment of error first.

{¶ 26} "The trial court erred to the prejudice of pltf-appellant in its journal entry of 10/4/02 granting defts-appellees' motion for summary judgment of pltf-appellant claims of hostile work environment sexual harassment [sic]."

{¶ 27} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines (1) no genuine issues as to any material fact remain to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 28} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 604 N.E.2d 138.

{¶ 29} In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Ohio Supreme Court modified and/or clarified the summary judgment standard as

applied in *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Under *Dresher*, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Id. at 296, 662 N.E.2d 264. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293, 662 N.E.2d 264. By the means listed in Civ.R. 56(C), the nonmoving party must set forth "specific facts" showing a genuine issue for trial exists. Id.

{¶ 30} This court reviews the lower court's granting of summary judgment de novo. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "[T]he reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140.

## I. Sexual Harassment

{¶ 31} The Ohio Supreme Court in *Hampel v. Food Ingredients Specialties, Inc.* (2000), 89 Ohio St.3d 169, 729 N.E.2d 726, paragraph two of the syllabus, described the elements of a prima facie case for hostile work environment sexual harassment:

{¶ 32} "(1) [T]hat the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,' and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action."

{¶ 33} Upon review, we conclude that appellees, Lawrence Industries and Kopittke, are entitled to judgment as a matter of law on Vitatoe's claims.

{¶ 34} Under R.C. 4112.02(A), it is unlawful discriminatory practice for an employer, because of the sex of any person, to discriminate against that individual with respect to hiring, tenure, terms, conditions privileges of employment, or any matter directly or indirectly related to employment. Such discrimination includes subjecting the employee to sexual harassment. *Peterson v. Buckeye Steel Casings* (1999), 133 Ohio App.3d 715, 729 N.E.2d 813.

{¶ 35} In Ohio, Federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112. *Powers v. Ferro Corp.,* Cuyahoga App. No. 79383, 2002-Ohio-2612, 2002 WL 1041850, citing *Little Forest Med. Ctr. v. Ohio Civ. Rights Comm.* (1991), 61 Ohio St.3d 607, 609–610, 575 N.E.2d 1164.

{¶ 36} Not all conduct in the employment context that can be construed as having sexual connotations can be classified as harassment in violation of the statute. *Meritor Sav. Bank v. Vinson* (1986), 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49. The conduct at issue must be severe or pervasive enough to create an environment that is abusive or hostile on a subjective basis by the individual, as well as abusive or hostile by a reasonable person. *Harris v. Forklift Systems, Inc.* (1993), 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295. Therefore, conduct that is offensive but is not severe or pervasive under the subjective and objective standard is not actionable. Id.

{¶ 37} The court must examine the circumstances surrounding the conduct and must consider them within the framework of several factors to determine whether the conduct is actionable. These factors include the conduct's frequency, the conduct's severity, whether the conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the victim's work performance. *Powers,* supra.

{¶ 38} Bearing in mind these factors, we conclude that Jordan's behavior was not severe or pervasive and did not unreasonably interfere with Vitatoe's work performance.

{¶ 39} Vitatoe claims that Jordan's behavior made her uncomfortable. In particular, she was concerned with Jordan's preoccupation with her personal and employment history. These instances merely reflect a heightened curiosity about Vitatoe. Furthermore, regarding the two instances whereby Jordan was allegedly following Vitatoe, both after she exited the restroom and once on her way home, there is no evidence that Jordan was not going about his normal activities or driving home after work, coincidently in the same general direction as Vitatoe's.

{¶ 40} Although the comments Jordan made about Vitatoe's appearance, particularly her posterior, were inappropriate, unprofessional, and misguided in the workplace, these comments are not enough to constitute severe or pervasive behavior that is subjectively or objectively hostile. Title VII was not intended to completely rid the workplace of vulgarity. *Baskerville v. Culligan Internatl. Co.* (C.A.7, 1995), 50 F.3d 428.

{¶ 41} While Jordan's behavior is not condoned, we find as a matter of law that the evidence construed most favorably to Vitatoe is insufficient to support a finding that Jordan's actions were severe or pervasive enough to create an objectionably hostile work environment. "[N]ot all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege of employment within the meaning of Title VII.'" *Meritor*, 477 U.S. at 67, 106 S.Ct. 2399, 91 L.Ed.2d 49.

{¶ 42} Vitatoe claims in her deposition that she was a diligent and hard worker; however, she is hard-pressed to demonstrate how Jordan's behavior affected her work production. Vitatoe cannot establish the elements necessary to support her claim of workplace sexual harassment, in violation of R.C. 4112.02. Accordingly, the lower court did not err in granting appellees' motion for summary judgment on the claim for sexual harassment. We find appellant's second assignment of error without merit.

{¶ 43} Appellant's first assignment of error states:

{¶ 44} "I. The trial court erred to the prejudice of pltf-appellant in its journal entry of 10/4/02 granting defts-appellees' motion for summary judgment on pltf-appellant's claims of retaliatory discrimination."

## II. Retaliatory Discharge

{¶ 45} Appellant contends that there is a genuine issue of material fact concerning who fired her and the underlying reason given for her termination. She further alleges that her version of the incident that resulted in her termination differs from the accounts of the witnesses of Cyrulik's investigation.

{¶ 46} In order to prove a claim of retaliatory discharge, appellant must establish three elements: that she engaged in a protected activity, that she was subjected to an adverse employment action, and that a causal link exists between the protected activity and the adverse action. *Peterson v. Buckeye Steel Casings* (1999), 133 Ohio App.3d 715, 729 N.E.2d 813.

{¶ 47} Once an employee successfully establishes a prima facie case, it is the employer's burden to articulate a legitimate reason for its action. Id. If the employer meets its burden, the burden shifts back to the employee to show that the articulated reason was a pretext. Id.

{¶ 48} Here, appellant's pursuit of her sexual harassment claim constitutes a protected activity. See *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 652 N.E.2d 653. Appellant claims that the action taken by Lawrence Industries was retaliatory; however, even if appellant has established a prima facie case of retaliation, Lawrence Industries has articulated several legitimate reasons for terminating her.

{¶ 49} The record indicates that prior to February 26, 2001, appellant was terminated for excessive absenteeism and insubordination toward her supervisor. Appellant signed a last chance agreement and was rehired.

{¶ 50} On February 26, 2001, appellant violated this agreement through her insubordination—utilizing abusive language directed at her coworkers and racing her car within the work place. Several witnesses were contacted during the investigation of this incident. After the investigation of this incident was completed, both appellant and Jordan were terminated. The employer's reason for termination was that appellant had violated the last chance agreement by her conduct on February 26, 2001.

{¶ 51} Appellant failed to offer sufficient evidence that any of the reasons articulated by Lawrence Industries were pretextual, nor did she provide any other basis for an inference that retaliation motivated the decision to terminate her. In fact, Lawrence Industries had rehired appellant, giving her a second chance for employment. We find appellant's first assignment of error without merit.

{¶ 52} Appellant's third assignment of error states:

{¶ 53} "III. The trial court erred to the prejudice of pltf-appellant in its journal entry of 10–4–02 granting defts-appellees' motion for summary judgment on pltf-appellant's *Greeley* public policy exception at will employment claim."

### III. Public–Policy Claim

{¶ 54} In her third assignment of error, Vitatoe contends it is solely within the jury's realm to decide the third and fourth elements under the *Greeley* exception to at-will employment, and the lower court erred by deciding those issues as a matter of law. Lawrence Industries contends that appellant cannot prove her claim on the causation and overriding justification elements.

{¶ 55} Most employment in Ohio is at-will, meaning it can be terminated by either the employee or employer for any reason not contrary to law. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150. When employment is at-will, the employee cannot succeed on a claim of wrongful discharge. However, there are exceptions to the at-will employment doctrine in cases where public policy would be violated by the discharge. *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990) 49 Ohio St.3d 228, 551 N.E.2d 981.

{¶ 56} In *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, the Ohio Supreme Court established the necessary elements for a claim of discharge in violation of public policy. The plaintiff must establish the following: first, that clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element);

second, that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); third, that the dismissal was motivated by conduct related to public policy (the causation element); and finally, that the employer lacked overriding legitimate business justification for the dismissal (the overreaching justification element).

{¶ 57} In the instant matter, appellant has failed to establish her discrimination and retaliation claims as discussed previously. She has not demonstrated that her discharge jeopardized public policy. Accordingly, the lower court properly granted summary judgment on her wrongful discharge in violation of public-policy claims. *Ekstrom v. Cuyahoga Community College* (2002), 150 Ohio App.3d 169, 779 N.E.2d 1067. Appellant's third assignment of error is without merit.

{¶ 58} This court hereby affirms the lower court's grant of summary judgment in favor of Lawrence Industries on the claims of hostile work environment, sexual harassment, retaliatory discharge, and discharge in violation of public policy.

Judgment affirmed.

DIANE KARPINSKI and ANTHONY O. CALABRESE JR., JJ., concur.