OPINION
{¶ 1} Appellant, Jane Doe ("Doe") appeals the decision of the Trumbull County Court of Common Pleas granting summary judgment in favor of Daniel Marker ("Marker") and NAPA Auto Parts ("NAPA"). For the following reasons, we affirm the decision of the court below.
 {¶ 2} Doe began work as a delivery driver at NAPA in Warren, Ohio, in July 1998. Marker is the manager of the NAPA store in Warren. According to the employment application Doe filled out, her employment at NAPA was "at will." In February 2000, NAPA had its employees sign an Employee Attendance Standards agreement. This agreement provided that, "If you are absent for two consecutive days without calling in, [NAPA] will consider that you have voluntarily abandoned your job and you will be subject to termination." Doe acknowledged reading and understanding the Employee Attendance Standards agreement and signed and dated it on February 2, 2000. NAPA enforced this policy strictly against all employees. Employees who were considered to have abandoned their job were automatically terminated.
 {¶ 3} Doe alleges that, between approximately October 2000 and April 2001, she and Marker had an affair.[1] Doe alleges that Marker initiated the affair and that her acquiescence was merely passive ("It just happened"). There is no evidence that Marker conditioned Doe's employment at NAPA on her submission to his advances. In addition to sexual acts, Doe testified that Marker would grope her at work. As a result of the affair and the groping, Doe claims that she suffered severe panic and anxiety attacks. Unable to continue in this manner, Doe terminated the affair in April 2001. After the termination of the affair, Doe testified that Marker did not engage in any sexually inappropriate conduct toward her.
 {¶ 4} During the course of Doe's employment with NAPA, NAPA had received numerous complaints about Doe's driving through NAPA's toll-free "How's My Driving" hotline. The first complaint was made in August 1998. By August 2001, at least ten such complaints had been made regarding Doe. Although Doe contests the substance of these complaints, she acknowledges that NAPA regularly brought these complaints to her attention. After receiving two complaints about Doe's driving within two weeks of each other, Marker suspended Doe for three days without pay on August 17, 2001.
 {¶ 5} On August 21, 2001, Doe called the NAPA toll-free hotline for employee complaints and reported that Marker had sexually harassed her. In this complaint, Doe stated that she acquiesced to Marker's advances because she was afraid of losing her job and because she was having marital problems. Doe also complained that after the end of the affair Marker's attitude toward her changed. Specifically, Doe reported that Marker began to criticize her for mistakes such as delivering the wrong part to the wrong location. According to the hotline complaint, "These mistakes were okay while [Doe] was performing the sexual acts for [Marker]." Doe believed that Marker was trying to have her terminated because of an affair he was having with another NAPA employee. Finally, Doe reported that she was scheduled to return to work on August 27, 2001, and she was afraid that she "will not have a job to return to." Therefore, she wanted "corporate [NAPA] to address this issue as soon as possible."
 {¶ 6} NAPA conducted an investigation into Doe's allegations. Two NAPA managers from the NAPA distribution center in Carrollton, Ohio, traveled to Warren and interviewed Marker, as well as the five other employees of the NAPA store in Warren. Neither Marker nor the other employees corroborated any of Doe's allegations.
 {¶ 7} Doe did not return to work on August 27, 2001. On August 21, 2001, the date she lodged the complaint, Doe provided NAPA with a doctor's note that she would not be able to return to work until September 10, 2001. Thereafter, Doe provided additional doctor's notes excusing her absence from work until October 24, 2001.
 {¶ 8} Doe did not return to work on October 24, 2001. Early on the morning of October 24, 2001, Doe was admitted to Trumbull Memorial Hospital in a drug-induced coma. Doe testified that she remained comatose for three full days. On October 27, 2001, Marker notified NAPA human resources manager, Beth Roof ("Roof"), that Doe had missed two days of work without notifying NAPA regarding her absence. That same day, Roof sent Doe written notice of her termination pursuant to the Employee Attendance Standards agreement. Doe received the letter on October 31, 2001 but did not make contact with anyone at NAPA regarding her termination until November 3, 2001.
 {¶ 9} Doe filed her complaint against Marker and NAPA on November 26, 2001. In the complaint, Doe made two claims of workplace sexual discrimination in violation of R.C. 4112, one for quid pro quo sexual harassment and the other for retaliatory discharge; one claim of violation of Ohio public policy; and one claim of intentional infliction of emotional distress. Marker and NAPA jointly moved for summary judgment as to all of Doe's claims. The trial court granted summary judgment in favor of Marker and NAPA on December 2, 2002. This appeal timely follows.
 {¶ 10} On appeal, Doe only challenges the trial court's ruling as to the claims for quid pro quo sexual harassment and retaliatory discharge. Doe raises two assignments of error.
 {¶ 11} "[1.] The trial court erred in granting summary judgment for appellees on appellant's sexual harassment claim.
 {¶ 12} "[2.] The trial court erred in granting summary judgment for appellees on appellant's retaliatory discharge claim."
 {¶ 13} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, viewed in a light most favorable to the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. Zivich v. Mentor Soccer Club,Inc., 82 Ohio St.3d 367, 369-370, 1998-Ohio-389 (citation omitted). A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. Grafton v. Ohio EdisonCo., 77 Ohio St.3d 102, 105, 1996-Ohio-336. A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision. Brownv. Scioto Bd. of Commissioners (1993), 87 Ohio App.3d 704, 711.
 {¶ 14} Ohio Revised Code 4112.02 provides: "It shall be an unlawful discriminatory practice: (A) For any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Under R.C. 4112.02(A), an employer is prohibited from engaging in sexual discrimination against an employee.Peterson v. Buckeye Steel Castings (1999), 133 Ohio App.3d 715, 722. The Ohio Supreme Court has held that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." Plumbers Steamfitters Joint ApprenticeshipCommt. v. Ohio Civ. Rights Comm. (1981), 66 Ohio St.2d 192, 196.
 {¶ 15} Generally speaking, under R.C. 4112.02(A), there are two types of actionable sexual harassment: "(1) `quid pro quo' harassment,i.e., harassment that is directly linked to the grant or denial of a tangible economic benefit, or (2) `hostile environment' harassment,i.e., harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment."Hampel v. Food Ingredients Specialties, Inc., 89 Ohio St.3d 169, paragraph one of the syllabus, 2000-Ohio-128 (emphasis sic).
 {¶ 16} In order to maintain an action for quid pro quo sexual harassment, the plaintiff must demonstrate "(1) that the employee was a member of a protected class, (2) that the employee was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors, (3) that the harassment complained of was based on gender, and (4) that the employee's submission to the unwelcome advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment." Schmitz v. Bob Evans Farms, Inc.
(1997), 120 Ohio App.3d 264, 269 (citation omitted).
 {¶ 17} As regards the "tangible job detriment" element of a quid pro quo claim, the employee's reaction to the alleged harassment must affect some "tangible aspect" of "the employee's compensation, terms, conditions, or privileges of employment." Farely v. Am. Cast Iron PipeCo. (C.A. 11, 1997), 115 F.3d 1548, 1552 (citation omitted). "The acceptance or rejection of the harassment by an employee must be an express or implied condition to the receipt of a job benefit or the cause of a tangible job detriment in order to create liability under this theory of sexual harassment." Id.
 {¶ 18} The trial court granted summary judgment based on Doe's failure to raise a genuine issue of material fact as to the fourth element of a quid pro quo sexual harassment claim, i.e., that Doe suffered no "tangible job detriment" as a result of her refusal to submit to Marker's sexual demands. The court stated, "There has been no showing of any job detriment to [Doe] during the time of the alleged sexual relationship nor at any time prior to her termination." Doe argues that she "quite clearly testified that after she terminated the relationship with * * * Marker, Marker criticized her for aspects of her job performance which had not been subjected to criticism during the relationship with Marker. This change in Marker's apparent attitude towards appellant's job performance following termination of the relationship would clearly constitute a tangible detriment suffered by [Doe]."
 {¶ 19} We hold that Marker's criticism of Doe for delivering the wrong parts to the wrong locations, even if Marker would have overlooked such errors during the course of their affair, does not constitute a "tangible job detriment" sufficient to support a claim of quid pro quo sexual harassment. According to the evidence before this court, these criticisms amounted to nothing more than criticisms. Marker's criticisms did not implicate any aspect of Doe's compensation, terms, conditions, or privileges of employment. Farely, 115 F.3d at 1552. Nor did Marker or NAPA ever sanction, discipline, or penalize Doe for mistakes she may have made while delivering parts, let alone for refusing Marker's sexual demands. Therefore, we find that these criticisms do not constitute a tangible economic detriment as required by the Ohio Supreme Court. Hampel,89 Ohio St.3d at 176; see, also, Bowman v. Shawnee State Univ. (C.A. 6, 2000),220 F.3d 456, 462 ("[t]he Sixth Circuit has consistently held that deminimis employment actions are not materially adverse, and, thus, not actionable") (emphasis sic); Sanders v. Casa View Baptist Church (C.A. 5, 1998), 134 F.3d 331, 339 (employees who suffered "mild criticism" of their work failed to demonstrate that their jobs were "tangibly and detrimentally affected by their decisions to end their sexual relationships with [their employer]"); cf. Chamberlin v. Buick YoungstownCo., 7th Dist. No. 02-CA-115, 2003-Ohio-3486, at ¶ 31 (proposition that employee would get "more money" if she went to hotel with employer did not constitute tangible job detriment where employee refused but received regular pay raises anyway).
 {¶ 20} Doe was suspended for three days without pay because of repeated complaints about her driving while making deliveries. Doe was terminated for missing two consecutive days of work without notifying NAPA. Doe has failed to make, or even to allege, any connection between these tangible detriments and her refusal of Marker's sexual demands.King v. Enron Capital Trade Resources Corp. (Apr. 5, 2001), 10th App. No. 00AP-761, 2001 Ohio App. LEXIS 1594, at *12, citing BurlingtonIndus. Inc. v. Ellerth (1998), 524 U.S. 742, 753 ("quid pro quo and retaliatory discharge claims require a demonstrable nexus between the offensive conduct of the supervisor and the adverse employment action"). Accordingly, Doe's first assignment of error is overruled.
 {¶ 21} Under her second assignment of error, Doe argues that the trial court erred by granting summary judgment on her claim for retaliatory discharge. Specifically, Doe alleges that she was terminated by NAPA for lodging a complaint of sexual harassment against Marker.
 {¶ 22} Ohio Revised Code 4112.02 provides: "It shall be an unlawful discriminatory practice: * * * (I) For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under section 4112.01
to 4112.07 of the Revised Code."
 {¶ 23} In order to maintain an action for retaliatory discharge, the plaintiff must demonstrate "(1) that she engaged in a protected activity, (2) that she was subjected to an adverse employment action, and (3) that a causal link exists between a protected activity and the adverse action." Peterson, 133 Ohio App.3d at 727. For the purpose of retaliatory discharge, the making and the prosecution of a claim of sexual harassment constitutes a protected activity. Vitatoe v. LawrenceIndus., Inc., 8th Dist. No. 81984, 2003-Ohio-4187, at ¶ 48. "Once a plaintiff successfully establishes a prima facie case, it is the defendant's burden to articulate a legitimate reason for its action. If the defendant meets its burden, the burden shifts back to the plaintiff to show that the articulated reason was pretext." Peterson,133 Ohio App.3d at 727. In order to prove that a stated reason is pretext for discrimination, the plaintiff must demonstrate both that the reason was false and that the real reason was discrimination. St. Mary's Honor Ctr.v. Hicks (1993), 509 U.S. 502, 515.
 {¶ 24} The trial court granted summary judgment based on Doe's failure to raise a genuine issue of material fact as to the third element of a retaliatory discharge claim, i.e., Doe failed to establish a causal link between her lodging of a sexual harassment claim against Marker and her termination. Doe argues that a genuine issue of material fact exists as to whether NAPA's proffered reason for her termination, that she had abandoned her employment, was pretext. Doe maintains that, because she had a legitimate excuse for failing to report into work from October 24 to October 27, 2001, "a reasonable trier of fact could determine that reliance of the employer on the `abandonment' of an employment policy was not a legitimate non discriminatory reason, and that reliance on the particular policy was a pretext for unlawful discrimination." We disagree.
 {¶ 25} Initially, we note that unless Doe demonstrates a causal connection between her allegations of sexual harassment and her termination, the issue of whether NAPA's reason for terminating her was pretext does not arise. The trial court found that no causal connection existed between the allegations of sexual harassment and Doe's termination. Neither do we. NAPA terminated Doe on October 27, 2001. This was almost two months after Doe had made her allegations against Marker, but it was the same day that Marker reported that Doe had missed two consecutive days of work without explanation. Beyond the fact that Doe's termination occurred after she made her allegations, post hoc propter hoc, there is no evidence linking these two events. In fact, Doe's own testimony belies the notion that the two events related. When asked if she believed that she was terminated for complaining against Marker, Doe responded, "No. It's my belief that I was terminated because I didn't show up for work because I was in the hospital."
 {¶ 26} What Doe seems to argue is that, since NAPA refused to accept her excuse for missing work and reinstate her employment, a genuine issue exists that NAPA's reason for terminating her was pretext. Again we disagree. Doe did not inform NAPA that she had been in the hospital until November 3, 2001, four days after she had received notice of her termination. Logically, Doe's belated explanation of why she had missed two consecutive days of work had no bearing on NAPA's reason for terminating Doe. NAPA was not aware of Doe's hospitalization at the time it made the decision to terminate her. We are left, therefore, with Doe's unsubstantiated allegation that she was terminated for lodging her sexual harassment claims against Marker.
 {¶ 27} We find this case factually similar to the Sixth Circuit Court of Appeals decision in Richmond-Hopes v. Cleveland (C.A. 6, 1998), case No. 97-3595, 1998 U.S. App. LEXIS 29572. In Richmond-Hopes, the Sixth Circuit affirmed a grant of summary judgment to the employer on plaintiff's retaliatory discharge claim. Plaintiff had complained of sexual harassment by her supervisor in May 1994. In September 1994, plaintiff was terminated for violating her employer's policy that employees must reside in the city of Cleveland Id. at * 2-*5. Thereafter, the plaintiff filed suit alleging retaliatory discharge.
 {¶ 28} In affirming the grant of summary judgment, the Sixth Circuit recognized that the employee's termination came after she had made complaints of sexual harassment against her supervisor. Id. at *16. The Sixth Circuit noted, however, that the plaintiff did not dispute the underlying factual basis for her termination, i.e., that she did not reside in the city of Cleveland Id. at *18. Moreover, the court pointed out that the plaintiff had signed a statement affirming that she understood her employer's residency requirement and that her failure to comply with this policy would result in her termination. Id. In this case, NAPA was aware of Doe's sexual harassment complaints. But, as inRichmond-Hopes, Doe was aware of NAPA's policy regarding absenteeism and does not dispute her failure to comply with that policy. Cf. Davis v.Rich Products Corp. (C.A. 6, 2001), case No. 00-5217, 2001 U.S. App. LEXIS 7114, at *12-*13 (plaintiff terminated for excessive absenteeism failed to show that her participation in a sexual harassment investigation was causally connected to her subsequent termination and failed to show that the employer's proffered reason for termination was pretextual).
 {¶ 29} Doe has failed to demonstrate a causal connection between the complaint and her termination. Doe has also failed to show that the reason for her termination was factually false or that it was insufficient to motivate her discharge. Accordingly, Doe's second assignment of error is without merit.
 {¶ 30} For the foregoing reasons, we affirm the decision of the Trumbull County Court of Common Pleas granting summary judgment in favor of NAPA and Marker.
Judgment affirmed.
JUDITH A. CHRISTLEY and CYNTHIA WESTCOTT RICE, JJ., concur.
[1] We note that Marker denies that he and Doe ever engaged in any sort of sexual relations. Marker further denies having sexual relations with any NAPA employees.