DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Michelle Collins, appeals from the Lorain County Court of Common Pleas entry of summary judgment in favor of appellee, A-1 Financial Services, Inc. This Court affirms.
 I. {¶ 2} On or about October 29, 2002, appellee hired appellant to work as a telemarketer on an at-will basis. Appellee had previously hired Jeffrey Flowers[1] on or about August 26, 2002 to work as a telemarketer. Nancy Richer was appellee's employee, who had supervisory authority over appellant and Flowers at all relevant times.
 {¶ 3} On October 31, 2002, Flowers exposed his genitalia and masturbated in front of appellant at work. Ms. Richer was not at work that day, so appellant informed another coworker that she was leaving. On November 1, 2002, appellant reported the incident to Ms. Richer and requested permission to leave work. Ms. Richer allowed appellant to leave, telling appellant to take as much time off as she needed.
 {¶ 4} Ms. Richer testified at deposition that she asked appellant to file an incident report, but appellant refused. Ms. Richer further testified that appellant asked her not to say anything to Flowers. Appellant disputes this testimony by Richer. Ms. Richer spoke with other workers, however, about the allegations in an effort to investigate appellant's claims. Appellant testified at deposition that Richer promised her that Flowers "would not come with [sic] arm's length of [her] anymore, that he was not going to bother [her] anymore."
 {¶ 5} During work on the evening of November 14, 2002, appellant asked Ms. Richer if she could take a cigarette break. Richer agreed. A few minutes later, Flowers asked to take a cigarette break and Richer agreed. Suddenly realizing that appellant and Flowers may be together on break and there may be a problem, Richer hurried to the parking lot, where employees smoked. Ms. Richer observed that the outside light had been unscrewed and that appellant and Flowers were standing outside in the reduced visibility. Richer testified that she observed that both appellant and Flowers were nervous upon her exit from the building. Richer told Flowers to tighten the light bulb and for both employees to go back to work. Upon appellant's request, Richer allowed appellant to leave work early that evening.
 {¶ 6} Before she left work on November 14, 2002, appellant told Ms. Richer that Flowers had again exposed himself to her. Although appellant believed that Richer "never said a word to [Flowers]," Richer in fact confronted Flowers in her office on Friday, November 15, 2002, about the incident and sent him home without pay, so that she could investigate the allegations further. Flowers asserted that any sexual interaction between himself and appellant was consensual. Ms. Richer called Flowers the following Monday and informed him that he was terminated from his employment with appellee.
 {¶ 7} Ms. Richer requested that appellant come in on Friday, November 15, 2002, to file an incident report. Appellant failed to appear for work on Friday and Saturday, informing Richer that her grandmother was ill. Appellant never did file an incident report regarding either incident or other allegations that Flowers was sexually harassing her by phone.
 {¶ 8} On Monday, November 18, 2002, appellant phoned Ms. Richer to inform her that appellant would be returning to work that day. Ms. Richer informed appellant that her services were no longer needed with the company due to appellant's excessive absences. Ms. Richer provided a call-off log, which indicated that appellant had either called off work or left early on nine occasions between October 31, 2002, and November 16, 2002. Although Richer had told appellant to take as much time off as she needed to cope with the incidents with Flowers, appellant missed work or left early citing other reasons on approximately six or seven days. Appellant admits that she was fired on November 18, 2002.
 {¶ 9} On April 21, 2003, appellant filed a complaint, alleging eleven claims against Flowers and appellee. Specifically, appellant alleged claims of hostile work environment; quid pro quo sexual harassment; sexual harassment and/or sexual discrimination pursuant to R.C. 4112.02 et seq. and4112.99; negligence; negligent and intentional infliction of emotional distress; negligent hiring, supervision, and retention; breach of implied contract; breach of contract; constructive discharge; assault and battery; and sexual discrimination in violation of public policy. Only the claim of assault and battery was not applicable to appellee.
 {¶ 10} Appellee filed a motion for summary judgment in regard to the relevant ten claims. The trial court granted appellee's motion for summary judgment with no analysis. Appellant timely appeals, setting forth one assignment of error for review.
 II. ASSIGNMENT OF ERROR
"The trial court erred by granting summary judgment on all counts in favor of appellee when evidence established genuine issues of material fact to be determined by a jury making summary judgment inappropriate."
 {¶ 11} Appellant argues that the trial court erred by granting summary judgment to appellee and dismissing all claims against appellee, because genuine issues of material fact remain. This Court disagrees.
 {¶ 12} This Court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12.
 {¶ 13} Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 14} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. State ex rel. Zimmerman v.Tompkins (1996), 75 Ohio St.3d 447, 449.
Quid pro quo sexual harassment/R.C. 4112.02 claim.
 {¶ 15} Appellant alleged a claim of quid pro quo sexual harassment, a form of sexual discrimination pursuant to R.C.4112.02. R.C. 4112.02 provides in relevant part:
"It shall be an unlawful discriminatory practice:"(A) For any employer, because of the * * * sex * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 16} The Ohio Supreme Court has stated that "federal case law interpreting Title VII of the Civil Rights Act of 1964 * * * is generally applicable to cases involving alleged violations of R.C. Chapter 4112." Plumbers Steamfitters Joint ApprenticeshipCommt. v. Ohio Civ. Rights Comm. (1981), 66 Ohio St.2d 192, 196. Therefore, this Court may look to federal case law in addition to state law to determine resolution of this matter.
 {¶ 17} In order to prevail on a claim for quid pro quo sexual harassment, appellant must establish
"(1) that the employee was a member of a protected class, (2) that the employee was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors, (3) that the harassment complained of was based on gender, and (4) that the employee's submission to the unwelcome advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment." Doe v. Marker,
11th Dist. No. 2003-T0-002, 2003-Ohio-6230, at ¶ 16.
 {¶ 18} Appellee conceded that appellant is a member of a protected class, that Flowers' actions were based on gender, and that it would accept appellant's allegations regarding the nature of the harassment as true. Therefore, it is merely the fourth element which controls the resolution of this matter.
 {¶ 19} Appellant's claim against appellee for quid pro quo sexual harassment cannot survive summary judgment, because Flowers had no supervisory authority over appellant and could not offer job benefits or threaten job detriment to appellant based on appellant's respective submission or refusal to submit to Flowers' sexual advances. Appellant testified at deposition that Ms. Richer was her supervisor and that Flowers was merely another telemarketer without other authority. Further, there is no allegation that Ms. Richer, appellant's sole supervisor, initiated unwelcome sexual advances towards appellant. Because appellant has failed to present any evidence that Flowers had any authority to offer her job benefits or threaten job detriment, or that appellee's sole supervisor engaged in unwelcome sexual advances toward appellant, appellant cannot establish the fourth necessary element of her claim of quid pro quo sexual harassment against appellee. Therefore, the trial court properly granted summary judgment to appellee in regard to the claim of sexual discrimination on the basis of quid pro quo sexual harassment pursuant to R.C. 4112.02.
Hostile work environment/R.C. 4112.02 claim.
 {¶ 20} Appellant alleged a claim of hostile work environment. "A plaintiff may establish a violation of R.C. 4112.02(A)'s prohibition of discrimination `because of * * * sex' by proving * * * `hostile environment' harassment, i.e., harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment." Hampel v.Food Ingredients Specialties, Inc. (2000), 89 Ohio St.3d 169, paragraph one of the syllabus.
 {¶ 21} In order to prevail on a claim for hostile work environment, appellant must establish
"(1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the `terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,' and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." Id. at paragraph two of the syllabus. See, also, McCormick v. Kmart Distrib. Ctr. (2001),163 F. Supp.2d 807, 815.[2]
 {¶ 22} The first, second and third elements of the claim raise no issues of fact. Further, there is no allegation that the harassment was committed by Ms. Richer, appellant's only supervisor. The sole argument by appellee in its motion for summary judgment was that appellant cannot establish that appellee failed to take immediate and appropriate corrective action in regard to Flowers' inappropriate conduct. Therefore, appellant could not establish that appellee is directly liable for its own negligence. See, Fleenor v. Hewitt Soap Co. (1996),81 F.3d 48, 50.
 {¶ 23} In this case, appellant reported the first incident to her supervisor the day after the incident. Ms. Richer allowed appellant to leave, then she began to investigate the allegations. Richer conferred with her supervisor regarding appropriate procedures. Richer spoke with several employees about the incident, at which time she received varied responses and observations. In addition, Richer assured appellant that Flowers would not bother her anymore. Richer continued to monitor the situation from her office, which allowed observation of the eight or so telemarketers.
 {¶ 24} Appellant did not report any further incidents to Ms. Richer, until Richer interrupted appellant and Flowers on a break and prevented any further harassment. Richer had allowed appellant to take a break, then allowed Flowers to take a break a few minutes later. Realizing that Flowers may be with appellant, Richer immediately left to find them. Flowers and appellant returned to their cubicles, but Richer soon observed appellant at Flowers' desk, leaning over and whispering to him. Appellant noticed Richer's observation and requested that she be allowed to leave work early because of the incident. Richer agreed. Richer then suspended Flowers the next day without pay to allow further investigation. Before Flowers was to return to work, Richer fired him.
 {¶ 25} Although appellant asserts that Ms. Richer knew of another incident in which Flowers exposed himself to another employee on a bus, that incident took place at approximately the same time as the first incident involving appellant. Ms. Richer was already involved in her investigation and continued such investigation and monitoring of the situation. Ms. Richer, as appellee's supervisor, took immediate action in regard to appellant's allegations. Appellee, through Richer, investigated the matter and took precautions to prevent further interaction between appellant and Flowers. While Richer's initial investigation tended to impugn appellant's credibility in regard to the matter, Richer continued to monitor the situation to prevent Flowers' contact with appellant. Richer, upon realizing that Flowers had found an opportunity to be with appellant on break, immediately interrupted the situation. After observing nervousness and fumbling by both Flowers and appellant, and hearing appellant allege a second exposure by Flowers, Richer confronted Flowers with the allegations. Richer then immediately suspended Flowers and fired him after further investigation before he returned to work.
 {¶ 26} Under these circumstances, this Court finds that no genuine issue of material fact remains; because appellee, through Ms. Richer, took immediate and corrective action in regard to an employee's unwelcome sexual advances toward appellant. Accordingly, the trial court properly granted summary judgment in favor of appellee on the claim of sexual discrimination on the basis of hostile work environment pursuant to R.C. 4112.02.
Negligence.
 {¶ 27} Appellant alleged a claim of negligence, asserting that appellee negligently maintained a policy of encouraging, permitting or condoning sexual harassment in the workplace. Appellant argues that the trial court erred by granting summary judgment to appellee on this claim, because appellee failed to offer any argument in support of its motion for summary judgment. This Court disagrees.
 {¶ 28} In its motion for summary judgment, appellee had already argued in regard to appellant's claims of negligent hiring and retention and hostile work environment, when it asserted that appellant's claim of negligence overlapped those other claims. Appellee, therefore, merely incorporated by reference its prior arguments in regard to appellant's claim of negligence. This Court finds merit in appellee's consolidation of arguments.
 {¶ 29} To prevail on a claim of negligence, appellant must establish the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach of duty. Menifee v.Ohio Welding Prod., Inc. (1984), 15 Ohio St.3d 75, 77. Appellee had a duty to provide its workers with a safe environment, free from sexual harassment. Venger v. Davis (Apr. 26, 1995), 9th Dist. No. 16940.
 {¶ 30} This Court has already found, however, that appellee, through Ms. Richer, acted reasonably, appropriately and in a timely manner to investigate and prevent sexual harassment by its employee Jeffrey Flowers. Appellee had established its efforts to investigate and cure any problematic situation. Given appellee's demonstration of Ms. Richer's efforts in response to appellant's allegation that Flowers exposed himself and masturbated in front of her, appellant has failed to establish any basis for a finding that appellee may have encouraged, permitted or condoned an unsafe or hostile work environment. Because no genuine issue of material fact remains in regard to whether appellee breached any duty, this Court finds that the trial court properly granted summary judgment in regard to appellant's claim of negligence.
Negligent hiring, supervision, or retention.
 {¶ 31} Appellant alleged a claim of negligent hiring, supervision, or retention of Jeffrey Flowers. Appellant argues that the trial court erred by granting summary judgment to appellee on this claim. This Court disagrees.
 {¶ 32} To prevail on a claim of negligent hiring, appellant must establish
"(1) The existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." Evans v. Ohio StateUniv. (1996), 112 Ohio App.3d 724, 739, quoting Ruta v.Breckenridge-Remy Co. (Dec. 12, 1980), 6th Dist. No. E-80-39.
 {¶ 33} At issue in this case is appellee's negligence in hiring or retaining Flowers in light of his sexually inappropriate behavior toward appellant in the workplace. This Court has held that in order to establish a claim of negligent hiring, a plaintiff must demonstrate that the employer knew or should have known of the employee's criminal or tortious propensities. Blaser v. BW-3 (May 19, 1999), 9th Dist. No. 98CA007054. "The foreseeability of a criminal act depends upon the knowledge of the defendant, which must be determined by the totality of the circumstances, and it is only when the totality of the circumstances are `somewhat overwhelming' that the defendant will be held liable." Staten v. Ohio ExterminatingCo., Inc. (1997), 123 Ohio App.3d 526, 530, citing Evans,112 Ohio App.3d at 742. Only where the employer could anticipate the misconduct, and the employer's taking the risk of it was unreasonable, will liability be imposed for any consequences. Id., citing Evans, 112 Ohio App.3d at 740.
 {¶ 34} In this case, appellant argues that appellee should have performed a criminal background check on Flowers prior to hiring him. Appellant sets forth no authority for this proposition.
 {¶ 35} Appellant further argues that appellee did nothing to investigate the first incident in which Flowers exposed himself to appellant. It is clear from the record that Ms. Richer investigated the matter, received conflicting information, but took efforts to prevent further interaction between Flowers and appellant. Ms. Richer realized that Flowers may have contact with appellant during a cigarette break on November 14, 2002, and she immediately acted to interrupt any interaction between the two employees. Richer confronted Flowers. Despite his assertions that any sexual interaction between himself and appellant was consensual, Richer immediately suspended Flowers. Upon further investigation, Richer terminated Flowers before he had an opportunity to return to work.
 {¶ 36} Only after the first incident could appellee reasonably foresee the potential for further misconduct by Flowers. Given Richer's ability to monitor the employees from her office, her investigation of the matter, and her continued close scrutiny of the situation, this Court cannot say that appellee was unreasonable in taking the risk of Flowers' continued employment. Under the circumstances, this Court finds that appellee presented sufficient evidence to establish that appellee was not negligent in the hiring or supervision of Flowers, and that appellant failed to meet her burden to rebut such evidence.Dresher, 75 Ohio St.3d at 293.
 {¶ 37} Further, once appellee interrupted a second interaction between Flowers and appellant, appellee immediately suspended, then terminated Flowers following further investigation. Accordingly, as appellee timely terminated Flowers, appellee cannot be liable for negligently retaining him. Appellee retained Flowers only so long as necessary to credibly determine that he had acted inappropriately in the workplace. Under the totality of the circumstances, this Court finds that appellant cannot establish as a matter of law that appellee was negligent in the hiring, supervision or retention of Flowers. Accordingly, the trial court properly granted summary judgment in favor of appellee on the claim of negligent hiring, supervision and/or retention.
Negligent and intentional infliction of emotional distress.
 {¶ 38} Appellant alleged a claim of negligent and/or intentional infliction of emotional distress. Appellant argues that the trial court erred by granting summary judgment to appellee on these claims. This Court disagrees.
 {¶ 39} Appellant may recover on a claim for negligent infliction of emotional distress under two circumstances. First, appellant may recover if she can establish that she suffered emotional injury accompanied by contemporaneous physical injury.Binns v. Fredendall (1987), 32 Ohio St.3d 244, 245. Appellant alleged that Jeffrey Flowers exposed himself and masturbated in front of her, although she made no allegation that Flowers physically harmed her during the incidents, notwithstanding her claim of assault and battery against Flowers. Appellant testified that she stood several feet away from and with her back to Flowers as he called her name and masturbated. During the second incident, appellant testified that she was approximately ten feet away from Flowers as he exposed himself to her. Under these circumstances, appellant has failed to establish that her alleged emotional injury was accompanied by contemporaneous physical harm.
 {¶ 40} The Ohio Supreme Court has held that "Ohio does not recognize a claim for negligent infliction of serious emotional distress where the distress is caused by the plaintiff's fear of a nonexistent physical peril." Heiner v. Moretuzzo (1995),73 Ohio St.3d 80, 87. Appellant may nevertheless recover for negligent infliction of emotional distress, where she can establish that she has either witnessed or experienced a dangerous accident or appreciated actual physical peril. Bungerv. Lawson Co. (1998), 82 Ohio St.2d 463, 466. In this case, there is no evidence to support that appellant experienced either through appellee's negligence.
 {¶ 41} Although appellant testified that she feared for her physical safety, while Flowers stood in front of their building door and masturbated, she has failed to establish that it was appellee, which placed her in a position to appreciate actual physical peril. Rather, she argues that it was Flowers who caused her to fear for her physical safety.
 {¶ 42} This Court reiterates that the evidence demonstrates that appellee took immediate and reasonable steps to investigate appellant's allegations of sexual harassment by Flowers and to ensure that the two coworkers were not left alone. Upon Ms. Richer's realization that appellant and Flowers may be together on a break, she rushed to the break area. Ms. Richer immediately sent appellant and Flowers back to their work stations. Although appellant may have reasonably believed that she was in actual physical peril due to Flowers' actions, appellant has presented no evidence to overcome appellee's evidence that appellee was not negligent in that it took immediate and reasonable actions to prevent further interaction between appellant and Flowers.
 {¶ 43} Under these circumstances, appellant has failed to establish necessary facts, which would allow her to prevail on her claim for negligent infliction of emotional distress. Accordingly, the trial court properly granted summary judgment in favor of appellee on that claim.
 {¶ 44} To prevail on a claim of intentional infliction of emotional distress, appellant must establish
"1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go `beyond all possible bounds of decency' and was such that it can be considered as `utterly intolerable in a civilized community;' 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that `no reasonable man could be expected to endure it.'" Pappas v. United Parcel Serv.
(Apr. 11, 2001), 9th Dist. No. 20226.
 {¶ 45} As this matter involves the claim of intentional infliction of emotional distress against appellee and not against Jeffrey Flowers, this Court must consider the conduct of appellee as it relates to the conduct of its employee and not the conduct of the employee himself. In other words, while Flowers' alleged conduct of exposing his genitalia and masturbating in front of appellant may be extreme and outrageous, it is appellee's conduct as Flowers' employer which must be extreme and outrageous to support a claim for intentional infliction of emotional distress against appellee.
 {¶ 46} In this case, appellee, through Ms. Richer, took appellant's initial allegation of Flowers' misconduct seriously. She allowed appellant to leave work and take as much time off as necessary in relation to the situation. Richer then began investigating the incident, learning information tending to discredit appellant's claims of unwelcome sexual advances by Flowers. Nevertheless, Richer promised appellant that she would prevent further interaction between appellant and Flowers. She continued to monitor the work environment for any problems. Immediately upon realizing that appellant and Flowers may be together on break, Richer hurried to the break area and interrupted a second incident two weeks after the first. Richer confronted Flowers, immediately suspended him, and ultimately fired him before he returned to work. Appellee timely and reasonably responded to appellant's allegations of Flowers' misconduct. Under the circumstances, this Court cannot say that appellee's conduct was extreme and outrageous. Accordingly, the trial court properly granted summary judgment in appellee's favor on the claim of intentional infliction of emotional distress.
Constructive discharge.
 {¶ 47} Appellant alleged a claim of constructive discharge, asserting that appellant was forced to take a leave of absence due to intolerable working conditions. Appellant argues that the trial court erred in granting summary judgment in regard to this claim. This Court disagrees.
 {¶ 48} In determining whether an employee was constructively discharged, the courts apply an objective test, asking "whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign." Mauzy v. Kelly Servs., Inc. (1996),75 Ohio St.3d 578, 588-89.
 {¶ 49} In this case, appellant testified at deposition that she called Ms. Richer several days after the second incident to let her know that she would be returning to work. Ms. Richer informed appellant at that time that her employment with appellee was terminated. Therefore, appellant did not resign or indicate that her working conditions were so intolerable that she felt compelled to resign. Appellant, in fact, desired to return to work. Under the circumstances, where appellee terminated appellant's employment, a cause of action for constructive discharge does not lie. Therefore, the trial court properly granted summary judgment in favor of appellee on the claim of constructive discharge.
Breach of contract/breach of implied contract.
 {¶ 50} Appellant alleged claims of breach of contract and breach of implied contract. Appellant argues that the trial court erred by granting summary judgment in regard to those claims. This Court disagrees.
 {¶ 51} In her breach of contract claim, appellant alleged that appellee delivered to appellant a copy of appellee's sexual harassment policy and that such document constituted an express contract between appellant and appellee that appellee would provide a work environment free from sexual harassment. Appellant has produced no such document, and she testified at deposition that she could not remember ever seeing appellee's discrimination policy. Appellee issued a company discrimination policy on November 15, 2002, after appellant's termination date, but there is no evidence that any such written policy existed during the course of appellant's employment with appellee. Appellee has demonstrated that appellant had no knowledge of any company sexual harassment policy. Appellant has failed to demonstrate the existence of any such policy or contract. Because appellant admits in her deposition that she could not remember any such document, appellant's claim for breach of contract must fail.
 {¶ 52} In addition, appellant was an at-will employee for appellee. Appellant signed an application for employment, which stated: "I understand that acceptance of an offer of employment creates no obligation upon you, the employer, to continue to employ me in the future." Under these circumstances, no employment contract was formed. In the absence of a valid contract, there can be no breach of contract. Accordingly, the trial court properly granted summary judgment in favor of appellee on the breach of contract claim.
 {¶ 53} In her breach of implied contract claim, appellant alleged that there was an implied contract that appellee would provide a safe work environment, free from sexual harassment. "An implied contract, like any other contract, will be enforced if an offer, an acceptance, and consideration are established." Brownv. Gen. Tire, Inc. (Feb. 28, 1996), 9th Dist. No. 17161, citingTersigni v. Gen. Tire, Inc. (1993), 91 Ohio App.3d 757, 760. Further, a determination of any implicit terms arises out of the facts and circumstances surrounding the employment-at-will relationship, including custom, course of dealing, and company policy. Brown, citing Mers v. Dispatch Printing Co. (1985),19 Ohio St.3d 100, paragraph two of the syllabus.
 {¶ 54} Appellant has presented no evidence to indicate that appellee failed to act to provide a safe work environment. Under the circumstances, appellant has failed to present any evidence that appellee breached any implied contract to maintain a safe working environment. Accordingly, the trial court properly granted summary judgment in favor of appellee on the claim of breach of implied contract.
Public policy violation.
 {¶ 55} Appellant alleged a claim that appellee violated Ohio's public policy against sexual discrimination and/or sexual harassment by its conduct towards appellant. Appellant argues that the trial court erred by granting summary judgment in favor of appellee on this claim. This Court disagrees.
 {¶ 56} This Court notes that, although appellant appears to argue that she was wrongfully discharged as against public policy in her brief, appellant did not allege wrongful discharge in her complaint. In fact, appellant alleged a claim of constructive discharge.
 {¶ 57} In this case, appellant has not alleged in her complaint that she was discharged in violation of public policy. Rather, all of appellant's claims are premised upon allegations of sexual harassment perpetrated by coworker Jeffrey Flowers and appellee's alleged tolerance of such harassment. Therefore, appellant effectively argues that she was sexually harassed in violation of public policy. Ohio does not recognize a tort for harassment in violation of public policy. Bell v. CuyahogaCommunity College (1998), 129 Ohio App.3d 461, 465. Even assuming, however, that a public policy tort exists, appellant has presented no evidence to rebut appellee's evidence of appellee's immediate and reasonable action taken to attempt to rectify the alleged sexual harassment by Flowers. Because appellee addressed appellant's concerns in a timely and reasonable manner, there is no evidence to indicate appellee's liability. Accordingly, the trial court properly granted summary judgment in favor of appellee on appellant's claim alleging a violation of public policy.
 {¶ 58} Based on the foregoing analyses, this Court finds that no genuine issue of material fact exists as to any of appellant's claims and that appellee is entitled to judgment as a matter of law. Appellant's assignment of error is overruled.
 III. {¶ 59} Appellant's assignment of error is overruled. Accordingly, the order of the Lorain County Court of Common Pleas, which granted summary judgment in favor of appellee is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Exceptions.
Slaby, P.J. Moore, J. concur
[1] Flowers was a defendant in the case below. Appellant was awarded default judgment against Flowers and damages in the amount of $25,000.00. Flowers is not a party to this appeal.
[2] Other cases add a fifth element, to wit, that the victim is a member of a protected class. See, e.g., Blankenship v. ParkeCare Ctr. (1997), 123 F.3d 868, 872. Appellee does not dispute that appellant is a member of a protected class.